A. C. ASKEW, Plaintiff-Appellant,

v.

Cleo BROWN, d/b/a Midwest Filter & Manufacturing Co., Defendant-Respondent.

No. 25335.

Kansas City Court of Appeals, Missouri.

Feb. 2, 1970.

J. Roger Buck, Buck & Circle, Kansas City, for plaintiff-appellant.

Joseph B. Bott, Kansas City, for defendant-respondent.

SPERRY, Commissioner.

This is a motion to set aside a default judgment filed more than thirty days after the default was rendered.

Plaintiff and defendant had a number of business transactions between them whereby each became indebted to the other. On August 18, 1967, plaintiff instituted suit in two counts against defendant for the net sum claimed to be due him as a result of those transactions. The first count was for money due on account of money advanced by plaintiff and the second count was for an amount equal to one half of the profits made by defendant on those transactions and which, by agreement, were to be paid to plaintiff.

The total amount sued for, exclusive of interest, was $12,535.43. On September 16, 1967, defendant, by his then attorney, Sweitzer, filed motion to dismiss for failure to state a cause of action. On February 2, 1968, plaintiff "noticed" for a hearing on the motion to dismiss. On that date the motion to dismiss was overruled and defendant was given 30 days in which to plead. On March 23, 1968, at defendant's request, Sweitzer filed notice and request to withdraw with defendant's written consent. With permission he did withdraw. No further pleadings were ever filed by either party.

No other steps were taken. The case was never set on the docket for any purpose. No request was made that it be set for trial. No notice was given to defendant of any intent to call the case for setting, or for trial, and the court was never requested to set it for trial or for any purpose. On September 30, 1968, plaintiff, appearing by counsel and in person, caused the matter to be taken up by the court as a case in default. Judgment was rendered by Judge Kimberlin in favor of plaintiff and against defendant in the total amount, both counts, $14,101.43.

Thereafter, on December 10, 1968, a "motion in the nature of a writ of Coram

Nobis" to set aside the judgment was filed. The matter was heard by Judge Dixon, one of the two judges of that court. On March 24, 1969, evidence was heard and, on April 23, 1969, Judge Dixon set aside the default judgment theretofore rendered by Judge Kimberlin. Plaintiff Appeals.

Both parties presented evidence. Defendant related the circumstances surrounding the account sued on. He stated that there were charges and credits on the account affecting both parties; that, when the suit was filed, his records and files disclosed that plaintiff owed defendant several thousand dollars more than defendant owed plaintiff; that he employed Mr. Sweitzer to represent him; that Mr. Sweitzer withdrew on March 23; that he had previously consulted Mr. Pine, an attorney at Warrensburg, who stated that if he would bring him the file from Sweitzer he, Pine, would represent him; that, on March 25, 1968, he took the file to Pine who stated that he would file a counterclaim against plaintiff; that Mr. Pine, at that time, represented defendant on a "damaged wall" case, which is one reason that he took this case to Pine; that, thereafter, and prior to rendition of the default judgment, he discussed the matter with Pine; that he talked to Pine five or six times about the wall and Askew cases; that Pine, repeatedly, stated that he would defend defendant and would file a "countersuit as soon as possible"; that, on October 22, 1968, defendant learned, for the first time, through the Harrisonville newspaper, that default judgment had been rendered against him in this case; that he had never received any notice of any kind stating that the case was set on the docket, or otherwise; that, when he learned of the default, he immediately contacted Pine, on October 23, 1968; that he talked to him at Warrensburg, where Mr. Pine's office was located; that Pine said he would get the default judgment "worked out"; that he would "take care of things, as he previously stated he would do"; that Pine said he would be in court at Harrisonville Friday, October 25, and would call or come to de-

fendant's office; that he did neither; that defendant went to see Pine the next day, October 26, and Pine again said he would take care of things and defend us; that on October 29, Mr. Sweitzer called him and said he had only until the next day, October 30, to get the judgment set aside, (within the 30 day period); that defendant immediately went to Warrensburg and saw Pine; that Pine said he would get something accomplished; that he would defend us; that we shouldn't worry about it; that on October 30, the last day for action prior to 30 days after judgment entered, he went to Pine's office early; that Pine was there but was in conference; that defendant sat until 12:15 when Pine and others left the office via the back door; that he did not get to talk to Pine; that he went to the court house where a trial was in progress in circuit court that afternoon at Warrensburg; Pine was involved therein; that he asked Pine to get someone to file something in this case at Harrisonville that afternoon; that he said he would; that, after 5 P.M., Pine told him he would see Judge Kimberlin (who was trying the case then in progress); that, after the jury returned a verdict, after 7 P.M., he again consulted Pine but Pine was going to his office with his clients and "brushed" defendant off; that he visited Pine three times after that but Pine merely reiterated what he had previously said. Defendant said that he was never notified of a docket setting, or received any notice concerning the case; that he did not attempt to secure present counsel sooner because be believed that Pine would represent him; that he had complete confidence in him; that he did not pay Pine a retainer fee because Pine said he would get it out of the "countersuit".

Judge Kimberlin, one of the judges of the circuit court at Harrisonville, testified at the instance of the defendant. He stated that he entered the default judgment; that Mr. Buck, plaintiff's counsel, "approached the bench" while court was in session and asked leave to take up the default matter; that he checked the file and

ascertained that the suit was against Mr. Brown who is a resident of Harrisonville and whom the Judge knew; that the amount involved was considerable and he asked Mr. Buck if Mr. Brown "knew about it" and that, as he understood Mr. Buck, Mr. Brown did know about it—"so I entered the judgment"; that if he had known that defendant did not know about the default judgment he would have made sure that he did know before entering it; that he would have made sure that he knew there was about to be entered against him a default judgment; that he would have delayed action until Brown was notified of the proposed default entry; that he saw defendant in court at Harrisonville when Mr. Pine was trying a case before the judge, but that defendant did not talk to the judge. On cross examination he repeated that he would not have entered the judgment if he had understood that defendant did not know of it; that he had the impression, from what Mr. Buck said, that defendant knew of the proposed entry of judgment; that he had been notified that a default judgment would be entered.

Mr. Askew stated that he was in court when the above proceeding was had but that he could not clearly hear what transpired.

Mr. Buck testified to the effect that he requested entry of the default judgment and that the court asked if "defendant knew about it"; that he told the court that he did, meaning that defendant knew that he was in default; that he did not tell the court that Mr. Brown knew that entry of judgment was to be made on that date.

Mr. Buck was asked "* * * whatever you said to the judge gave him the impression that Mr. Brown had been notified (that the default was being taken up). You are not denying that are you?" Mr. Buck said, "I am not denying that". Judge Dixon asked if the case was set at the docket call and Mr. Buck answered, "no sir, your honor. It was taken as a default"; and the court asked: "without any notice". Mr. Buck said: "yes sir, without any notice". He stated that there was never any setting of this case made and it was not called on the docket; that he never appeared and asked that it be set.

■ Judge Dixon found that the default was entered by Judge Kimberlin through a misunderstanding "which in his language. 'I would not have entered' if he had understood the facts completely". We approve of this finding and hold that it is correct. The court also found that plaintiff's attorney did not intentionally mislead Judge Kimberlin by the language which he used. With this we are also in accord.

In this case it appears by the direct testimony of defendant, that he was sued on August 18, 1967; that he had attorney Sweitzer to represent him in filing a motion to dismiss; that such is the only pleading, of any kind, that was ever filed for defendant. It also appears that, on February 2, 1968, this motion to dismiss was duly "noticed" for hearing on February 26, 1968; that, at that last hearing, the motion to dismiss was overruled and defendant was given 30 days, or until March 28, 1968, in which to plead; that defendant learned of this action; that no pleading was ever filed, *either within* that time period, or *thereafter*. Sweitzer, with defendant's permission, withdrew on February 25, and defendant sought to have Mr. Pine, of Warrensburg, who represented him on a damaged wall case, to represent him on this case. Defendant's testimony is that he requested Pine to file pleadings but that he did not do so. There is no question but that defendant knew that his motion to dismiss was overruled and that he, at no time filed any other pleading; that he also knew of the rendition of the default judgment within time for him to have filed motion to set aside before the passing of 30 days and was, in fact, present in court at Warrensburg on the 30th day, when Judge Kimberlin was holding court. Neither he nor his attorney ever took any legal steps in this matter from and after the date the

motion to dismiss was overruled until the instant motion was filed.

Defendant says this action is a motion in the nature of a writ of error coram nobis, defined as follows in Norman v. Young, (Mo.) 301 S.W.2d 820–822:

" * * *

"[1, 2] A motion in the nature of a writ of error coram nobis 'is made to the trial court to correct errors of fact, not appearing on the face of the record, affecting the validity of proceedings which errors of fact were unknown to the party now seeking relief and to the court at the time of the disposition of the particular case, and which errors of fact, had they been known, would have prevented the rendition of the judgment'. * * *".

▌ It is not important to give a specific name to this proceeding. It is a motion to set aside a default judgment. It is in the nature of an independent proceeding and a direct attack on the judgment. The order of the court ruling the motion is appealable. In order to prevail in such an action defendant must allege and prove that there was good reason for the default. Defendant is chargeable with the negligence of his lawyer in permitting a default judgment to be entered. The attorney's negligence is imputable to his client. Edwards v. Rovin, 322 S.W.2d 139, 142–143.

In Culp v. Culp, Mo.App., 216 S.W.2d 551, 554, the court held that "the law regards neglect of an attorney as the client's own neglect and will give no relief from the consequence thereof. One is not, in the absence of fraud or collusion, entitled to a new trial for the neglect of his counsel in failing to notify him of steps taken in the cause". In the case at bar there is no suggestion of fraud or collusion.

▌ Defendant admits that the negligence of counsel is imputable to the client but, he says, that rule does not apply where a lawyer abandons the defense of a cause

without notice to the client. He cites Whitledge v. Anderson Air Activities, Mo., 276 S.W.2d 114. It was there held that, in overruling a motion to set aside default judgment, the question for decision was whether the court exercised sound judicial discretion. This is a case where we should affirm the judgment unless it is clearly erroneous. In the Whitledge case, l.c. 116, it was said that the negligence of Whitledge's counsel in permitting entry of a default judgment was not chargeable to Whitledge and said there is an exception when counsel abandons the defense of the case without notice to his client. That was a case where an insurance carrier denied the liability after defendant had been lead to believe there was coverage and that its attorney would defend. This resulted in a default judgment. Here, defendant knew, for a long time, that his attorney had filed no pleadings and that he was in default. He also knew that the time for filing pleadings was about to expire. He was in his attorney's office on the last possible date for filing a motion to set aside the default prior to expiration of 30 days from its rendition. His attorney snubbed him. He was also in the court room at Warrensburg where Judge Kimberlin was trying a case, but he did not call the matter to the judge's attention although he knew that his attorney had taken no steps in that direction, and it was the last day he could act prior to expiration of 30 days from rendition. Since the evidence clearly shows defendant's negligence, we will not discuss the issue of a meritorious defense.

Under all of the facts here involved we hold that the trial court erred in setting aside the default judgment.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.