George WARD, Respondent,

v.

COOK UNITED, INC., d/b/a Cook's Discount Department Store, Appellant.

No. KCD 26476.

Missouri Court of Appeals, Kansas City District.

March 3, 1975.

Motion for Rehearing and/or Transfer Denied March 31, 1975.

Application to Transfer Denied May 12, 1975.

Don B. Roberson, Kansas City, for appellant.

S. Preston Williams, David Lee Wells, and Theodore Von Willer, Jr., Law Student, North Kansas City, Keith Wilson, Jr., Independence, for respondent.

Before PRITCHARD, P. J., and SWOFFORD, SOMERVILLE and TURNAGE, JJ.

SWOFFORD, Judge.

A default judgment was entered against the defendant-appellant in the court below on August 4, 1972 for actual and punitive damages in an action in false arrest and imprisonment. On November 17, 1972, the court overruled the defendant's motion to quash summons, service and return of service and its alternative motion for a new trial, and its alternative motion to set aside the judgment for lack of jurisdiction and venue. This appearance and motion to quash and the alternative requests had been filed on August 18, 1972, 14 days after the entry of the default judgment. Following the orders of the trial court on November 17, 1972, the defendant appealed.

The defendant raises two points which it urges requires reversal.

*First*, that the trial court erred in overruling its motion to quash the summons, service and return of service "since the evidence established purported service upon defendant, a foreign corporation, by attempted service on an individual and noncompliance with Section 506.150(3) RSMo"; and *Second,* that the trial court erred in overruling defendant's motion to set aside the default judgment or to grant it a new trial since the evidence established that defendant "had meritorious defenses, excuse or justification for the default with no prejudice to plaintiff" and that the motions of defendant were timely. The reso-

lution of these points requires a somewhat detailed summary of the facts revealed by this record.

The plaintiff-respondent was arrested on May 23, 1972 on the premises of "Cook's Discount Department Store" at 4820 North Oak Trafficway, Kansas City, Clay County, Missouri, by one Delores Morriss, a Security Officer at this store. He was detained at the store, then taken to Kansas City, Missouri police headquarters and charged on complaint of Delores Morriss with stealing under Section 26.50, Code of General Ordinances of Kansas City, which ordinance provides for a maximum fine of $500.00 or six months imprisonment. He was booked, mugged, fingerprinted and placed in a "hold tank" with other prisoners where he was held for several hours until his cash bond could be posted. Subsequently on May 31, 1972, he was tried in the municipal court where Security Officer Morriss testified. He was found not guilty and thereupon discharged.

The complaint filed by Security Officer Morriss charged him with stealing a hose shut-off valve priced at seventy-two cents. The record showed that the plaintiff was a cement contractor employing at times as many as fifteen workmen, and that his business did a yearly gross in excess of $100,000.00. He had no previous record, except for a traffic violation. No valid purpose would be here served to relate the details of the incidents at the store leading to his arrest, except to say that at the default hearing, plaintiff presented strong and convincing evidence both as to the cause of action for arrest and false imprisonment and as to the damages resulting therefrom. At the conclusion of the default hearing, the trial court entered a judgment against the defendant in the amount of $50,000.00 actual and $50,000.00 punitive damages.

Following plaintiff's acquittal in the municipal court, his suit for damages was filed in the Circuit Court of Clay County, Missouri on June 29, 1972 and on that same day the summons was issued for service on "Cook United, Inc. d/b/a Cook's Discount Department Store, 4820 North Oak Trafficway, Kansas City, Missouri 64118" with the accompanying direction "SERVE: STORE MANAGER". The sheriff's return shows that a copy of the petition and summons was served by a deputy sheriff on June 30, 1972 upon "Operation Manager, Sam Wray". The legal validity of this summons and return thereto will be hereinafter discussed as the same relate to the first point raised by the defendant Cook United, Inc.

Preliminary to this, however, consideration must be directed to the record evidence with respect to the operation of Cook United, Inc. and of the "Cook's Discount Department Store" on North Oak Trafficway where the arrest occurred. There is no dispute in the record that Cook United, Inc. is an Ohio corporation with its principal business office in the area of Cleveland, Ohio, and that the records of the Secretary of State of Missouri disclose that it has never been licensed to do business nor is it registered under the Fictitious Name Act in Missouri. It is the position of Cook United, Inc. that the "Cook's Discount Department Store" was in fact owned and operated by The Ontario Store of St. Louis, Inc., another Ohio corporation (hereinafter referred to as "Ontario"), which was licensed to do business in Missouri at the times involved, with a duly appointed service agent in St. Louis, Missouri. No hard proof of this fact was brought forward at the evidentiary hearing on the post judgment motions, other than the affidavit of trial counsel for Cook United, Inc.

█ It is not a prerequisite for valid service upon a foreign corporation that it be *licensed* to do business in Missouri, but it is sufficient if it is *in fact* doing business in this state and is subject to a type of service on corporations as provided by Missouri statutes. Wooster v. Trimont Mfg. Co., 356 Mo. 682, 203 S.W.2d 411, 412[2, 3] (1947); Morrow v. Caloric Appliance Corporation, 372 S.W.2d 41, 43 [1, 2] (Mo. banc 1963); International

Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Focus must be directed to the operation of the "Cook's Discount Department Store" on North Oak Trafficway. This was a large free-standing department store which in the judgment of a witness involved in that type of development and operation did a gross business of around two million dollars a year in retail sales. Cook United, Inc. was one of the larger national discount operations. The term "free-standing" is a trade term which means an operation of retail sales in one building divided into various departments and open to the general public.

At the evidentiary hearing on the motions, Cook United, Inc. introduced six documents of conveyance which, although counsel has failed to file the exhibits in this court as required by Rule 81.15, V.A. M.R., apparently show that the title to the real estate upon which this store was constructed was at one time, at least, held by Ontario. It was admitted that Ontario was a subsidiary of Cook United, Inc. Also, it was admitted that the Kansas City, Missouri Occupation License No. 567650 for 1972 was in the name of Ontario. The Clay County Merchants license was applied for in the name of "Cook's Department Store" and the bond in connection therewith shows Ontario as both the principal and surety. The fee for this latter license was, however, paid by Cook United, Inc. and forwarded to the Clay County Collector by Cook United, Inc. from Ohio. Both this Clay County license and the Kansas City Fire Department permit were issued in the name of "Cook's", 4820 N. Oak Twfy., Kansas City, Missouri. These are the only areas in this record that show any *nexus* whatsoever between Ontario and the operation of the retail store on North Oak Trafficway.

On the other hand, the record shows that newspaper advertisements were run promoting retail sales at that store which were headed:

"COOKS
Discount Department Store
A Division of Cook United, Inc."

At the evidentiary hearing on the motions, one Helen Loftis testified under the compulsion of a subpoena duces tecum. She stated that she was employed by Cook United, Inc. at Store 779 located at 4820 North Oak Trafficway, as office manager; that she had been employed by Cook United, Inc. for five years in March, 1972; that she had formerly worked for Cook United, Inc. in Muskogee, Oklahoma, and had been transferred to Kansas City in October, 1971; and that the main office of Cook United, Inc. was in Maple Heights, Ohio (apparently in the Cleveland area).

The testimony of Loftis further established the following undisputed facts:

The application form used for persons who applied for jobs at the store (Plaintiff's Exhibit K-2) is headed "Cook United, Inc." and the form which is sent with the time card to the home office when a person is hired (Plaintiff's Exhibit K-1) is also headed "Cook United, Inc."

The payroll checks for *all* employees at the store (of which an example is Plaintiff's Exhibit J) are drawn on check forms of "Cook United, Inc., Cleveland, Ohio." Where adjustments in paychecks are required, a form for "payroll exceptions" [Plaintiff's Exhibit J(1)] is used and are sent to the home office at Cleveland for handling. This form is also headed "Cook United, Inc."

When a person is employed, he is given a booklet which is entitled "Cook's Discount Store Division—Welcome" which outlines the functions of the store and the employee's duties and benefits. This booklet or manual on the first page contains "A Message from the President—Welcome to Cook's Discount Division", signed by Roy B. Minor, identified in the record as President of Cook United, Inc.

The form used with reference to a leased department in a store (Plaintiff's Exhibit M) is a weekly report of business done by such department and is headed

"Cook United, Inc. Discount Store Division", which is sent to the home office by the local office manager. There is only one such leased department at the North Oak store.

When seasonal merchandise, such as Christmas items, are not sold, a form called "Seasonal Packaway List" is completed (Plaintiff's Exhibit N) and is sent back to the home office at Cleveland. Some of the actual merchandise is warehoused at Kansas City and some in Cleveland. This form is also headed "Cook United, Inc."

The store has a weekly sales plan and the home office lists the items that are to go on sale, cost, price and other pertinent data on a form headed "Sales Plan" (Plaintiff's Exhibit O) and at the end of the week the office manager at the store lists what has been sold and the cost. This form is also headed "Cook United, Inc."

There is also a store procedure manual used by the department heads which is entitled "Cook United, Inc.—Department Store Procedures Manual" (Plaintiff's Exhibit P).

When merchandise is transferred from one store to another, an "Inter Store Transfer" form is used (Plaintiff's Exhibit Q). This form is executed in quadruplicate and the original copy is sent to the home office in Ohio of Cook United, Inc. This form is also headed "Cook United, Inc.—Discount Stores Division".

When merchandise is purchased, a purchase order form is made in quadruplicate at the store (Plaintiff's Exhibit S) and sent for approval to the buyer at the home office at Cleveland (Maple Heights) for hard goods and to Cook United, Inc.'s buyer at New York for soft goods.

All papers originating at the local store are sent to the home office by the office manager in postage prepaid envelopes (Plaintiff's Exhibit R).

All of these forms are furnished to the local store as office supplies from Cook United, Inc. out of Cleveland, Ohio.

While there are four different chains of discount stores, designated "Uncle Bill's", "Clarks", "Ontario" and "Cook's", the forms above described are used by each.

■ It is clear from the foregoing that the defendant Cook United, Inc. was doing business in Clay County, Missouri at the time of plaintiff's arrest in the store at 4820 North Oak Trafficway within the meaning of Wooster v. Trimont Mfg. Co., supra; Morrow v. Caloric Appliance Corporation, supra; and International Shoe Co. v. State of Washington, supra, since a substantial part of its retail sales business was done in Missouri. The foregoing evidence did not represent isolated transactions but daily regular activity by the defendant in Clay County, Missouri and complete control and dominance by it over such activity and the employees engaged in such activity. This being so, it was amenable to the jurisdiction of the Clay County Circuit Court and the venue was there, provided proper service was had upon it as provided by law.

■ As the briefs and oral argument of appellant are understood, it asserts that the service herein is not in accordance with the statute governing service upon corporations, Section 506.150(3), since the return shows service upon an individual, Sam Wray, who is described as "Operations Manager" of the defendant by substituted service at his "dwelling place or usual place of abode" by leaving copies of the petition and summons "with some person" of his family over the age of 15 years, a method for personal substituted service as authorized by Section 506.150(1). This type of service would, of course, be ineffective to bring a corporation within the jurisdiction of the court. This bizarre interpretation of the return is not supported or warranted by the record proper in the trial court. The clerk of that court was requested by this court, under the authority of Rule 81.12(c), to send up the original summons and return of service. Exact photocopies of those documents are incorporated herein.

CIRCUIT COURT FOR THE COUNTY OF CLAY

STATE OF MISSOURI

SEVENTH JUDICIAL CIRCUIT

SHERIFF; MAKE RETURN ON REVERSE SIDE & RETURN THIS WRIT TO CLAY COUNTY

GEORGE WARD  Plaintiff........

CLAY COUNTY CIRCUIT COURT
DIVISION NUMBER THREE

vs.

Case Number 42984

COOK UNITED, INC. d/b/a Defendant.... ...
Cooks Discount Department Store

**RECEIVED**
SHERIFF'S DEPT.

JUN 29 P.M.

CLAY COUNTY
LIBERTY, MO.

**SUMMONS**

The State of Missouri to Defendant

Cook United, Inc. d/b/a
Cooks Discount Department Store
4820 North Oak Trafficway
Kansas.City, Missouri 64118
(SERVE: STORE MANAGER)

You are hereby summoned to appear before the above-named court and to file your pleading to the petition, copy of which is attached hereto, and to serve a copy of your pleading upon Attorney— For Plaintiff—to-wit:

Law Offices of
S. Preston Williams
205 Pioneer Building
North Kansas City, Missouri 64116

Keith Wilson, Jr.
200 Chrisman Saywer Bank Bldg.
Independence, Missouri 64050

all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the petition.

(Seal of Circuit Court)

CLIFFORD G. HALL, Clerk.

By _Myra A. Miller_
Deputy Clerk

Dated June 29 , 19 72

CIVIL CODE FORM No. 1 ·  3114

### RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

(1) By delivering on the   30th day of    June        , 19 72, a copy of the summons and
a copy of the petition to ~~each of~~ the within-named defendants Cook United, Inc., d/b/a
Cooks Discount Department Store, served Operation Manager, Sam Wray

(2) By leaving on the          day of                     19      , for each of the within-
named defendants

a copy of the summons and a copy of the petition at the respective dwelling place or usual place of
abode of said defendants with some person of his or her family over the age of 15 years;

(3) By

All done in    Clay            County, Missouri.

Sheriff's Fees:

___Mark F. McClure___

Sheriff of___Clay_____County, Missouri

| | | |
|---|---|---|
| Summons | $ 1.00 | |
| Non est | $ | By _Kenneth Hamblen_ |
| Mileage | $ 2.50 | Deputy Sheriff |
| TOTAL | $ 3.50 | |

FORM 3A

───────◆───────

▮ As previously stated, the summons is directed to Cook United, Inc. d/b/a Cook's Discount Department Store. The only address shown is 4820 North Oak Trafficway and the specific directions to the sheriff are "SERVE: STORE MANAGER". The printed form employed by the Sheriff of Clay County, Missouri for "Return on Service of Summons" is broken down into three distinct and separate forms for returns to be used according to the method of service employed. *First,* that for personal service; *second,* for substituted personal service; and *third,* for other types of service. It is obvious from this return that the sheriff used the first of such forms of return, i. e. that for service upon the corporate defendant, and that the return was never intended to and did not reflect substituted service under the

second form of return. The first two lines of the second form are stricken. Nevertheless, the defendant has incorporated the last two lines of the second form into its version of the return. Such conclusion is not warranted. It is obvious from the face of the return that the deputy sheriff utilized the first form of return and was attempting to show personal corporate service, and had incompletely stricken the second form. It is well established and ancient law in this state that returns of service on corporations should receive a reasonable and natural interpretation and effect should be given to their plain intent and meaning. Davis v. Jacksonville Southeastern Line, 126 Mo. 69, 28 S.W. 965, 966 (1894); Regent Realty Co. v. Armour Packing Co., 112 Mo.App. 271, 86 S.W. 880, 882 (1905); Bedell v. Richardson Lu-

bricating Co., 201 Mo.App. 251, 211 S.W. 104 (1919); Carter v. Flynn, 232 Mo.App. 771, 112 S.W.2d 364, 369[3] (1938). It is not a reasonable or natural result to conclude that the sheriff attempted in this case to make use of both the first and part of the second form to indicate service on the defendant by substituted service, in the face of specific instructions appearing on the summons.

■ The return here is subject to only one rational interpretation, namely, that personal corporate service and not substituted service was shown, and the following should be accepted as the return:

"I hereby certify that I served the within summons:

(1) By delivering on the 30th day of June, 1972 a copy of the summons and a copy of the petition to * * * the within named defendant Cook United, Inc., d/b/a Cooks Discount Department Store, served Operation Manager, Sam Wray

\* \* \* \* \* \*

All done in Clay County, Missouri

> Mark F. McClure
> Sheriff of Clay County, Missouri
> by Kenneth Gamblin
> Deputy Sheriff"

It is this return that must be tested as to its sufficiency, not the version urged by appellant.

Section 506.150(3) RSMo 1969, V.A.M. S., provides in pertinent part:

"The summons and petition shall be served together. Service shall be made as follows:

\* \* \* \* \* \*

(3) Upon a domestic or foreign corporation * * * by delivering a copy of the summons and of the petition to an officer, partner, *a managing or general agent,* * * *"

■ In testing the sufficiency of this return under the terms of the statute, certain facets of the record become pertinent and, indeed, vital. The evidence above outlined clearly demonstrates that the defendant was in fact doing business in Clay County, Missouri at the location of Cook's free-standing department store at 4820 North Oak Trafficway, and this address was the one used in the summons directing service with the further more specific direction to serve the manager, and as far as this record shows, that was the only address given or available to the sheriff. There was no evidence offered, proof adduced or point made here that Sam Wray was not in fact the Operations Manager of that store or that such title designation did not fall within the scope of Section 506.-150(3). The defendant tacitly admitted this capacity in its motion to quash, where it asserted the "purported service *upon the manager of said store,* was not service and process upon this defendant." This assertion was not based upon the contention that Sam Wray was not the manager of that store, but upon defendant's contention that Ontario and not Cook United, Inc. was the operator of the store and *ergo,* that service upon Ontario's store manager was not service upon the defendant.

■ A corollary of the rule that a sheriff's return must receive a natural and reasonable interpretation, Carter v. Flynn, supra, is the rule that in order for such interpretation to apply, the return need not be in the exact language of the statute. Cain v. Courter, 215 S.W. 17, 19[2] (Mo. 1919).

■ But an even more compelling reason why this return was valid is that the defendant did receive the suit papers and thus had actual notice of the litigation within the time for answer. The primary and basic purpose of summons and service is to convey such notice "so that [the defendant] may appear and be heard if he desires", State ex rel. Minihan v. Aronson, 350 Mo. 309, 165 S.W.2d 404, 407[1] (1942); State ex rel. Mills Automatic Merchandising Corporation v. Hogan, 232

Mo.App. 291, 103 S.W.2d 495, 497[5] (1937).

The trial court did not err in overruling defendant's motion to quash the summons and return and to set aside the judgment for lack of jurisdiction and venue.

The gravamen of the defendant's second point is that the trial court abused its discretion in failing to set aside the default judgment. It asserts that upon the record before that court the facts appeared that the defendant 1) had meritorious defenses to plaintiff's claim; 2) the defendant had excuse and justification for permitting default; 3) no prejudice would result to the plaintiff if the default were set aside; and 4) timely motion to set aside was made. The facts referred to are gleaned entirely from the affidavits of defendant's trial counsel and that of one George Harlan, the Claims Manager and attorney for the Zurich Insurance Company in the Kansas City office. Neither of these affiants testified in person at the evidentiary hearing on the motions, nor was any other witness proffered, including Security Officer Delores Morriss, who made the arrest, or any person to refute the oral and documentary evidence offered by plaintiff in connection with the testimony of Office Manager Helen Loftis. Taking the affidavits of trial counsel and Harlan at face value, the facts presented may be thus summarized:

The affidavit of counsel asserts that Cook United, Inc. is an Ohio corporation; that it received the petition and summons in this case at its Cleveland, Ohio office on or about July 13, 1972 and immediately forwarded these papers to its insurer, Zurich; that Zurich received and acknowledged receipt of such papers for defense handling and for appropriate and timely answer; that Cook United, Inc. was not aware and had no reason to believe that responsive and timely answer had not been filed until after the default judgment of August 4, 1972; that the store on North Oak was not owned or operated by Cook United, Inc. but by Ontario; that Cook

United, Inc. has a meritorious defense to the suit and, that it has excusable reason, not occasioned by negligence, for the default.

Harlan's affidavit acknowledges that Zurich received the suit papers from Cook United, Inc. on or about July 20, 1972; that Zurich acknowledged receipt thereof and advised that as insurer, it would handle the defense and the filing of pleadings; that the suit papers were immediately processed "but by error of routing" they became intermingled with assignments to an adjuster in lieu of being assigned to defense counsel; that such papers were not assigned to counsel until after the default of August 4, 1972; that the fact of the default was not known to Zurich until after it was entered; and, that Cook United, Inc. was not negligent but that the judgment was due solely "to an inadvertent error in routing" by Zurich.

A motion to set aside a default judgment is one that appeals to the sound discretion of a trial court and this court will not interfere with such court's action unless the record clearly demonstrates that there was an abuse of discretion and the judgment on such motion was clearly erroneous. Cooper v. Armour and Co., 222 Mo.App. 1176, 15 S.W.2d 946, 951[3] (1929); Askew v. Brown, 450 S.W.2d 446, 450[6] (Mo.App.1970).

In such proceedings (in the absence of fraud or other such circumstances) the vital and basic requisites upon which movant must base his claim for relief are that he has a meritorious defense to plaintiff's claim and that he has good reason or excuse for the default. The burden is upon the movant to establish such grounds by facts. Whitledge v. Anderson Air Activities, 276 S.W.2d 114, 116[3] (Mo.1955); Edwards v. Rovin, 322 S.W.2d 139, 142–143[4, 6] (Mo.App.1959).

While recognized as relevant in certain cases, the third ground raised by

Cook United, Inc. (that no prejudice would result to the plaintiff) and its fourth ground (that timely motion to set aside the default was made), even if clearly established, are completely dependent upon a convincing showing of the first two grounds and would not, standing alone, ordinarily justify the exercise of judicial discretion to set aside the default judgment. It should be here noted that no question is raised in the record or in the briefs that the post judgment motions of Cook United, Inc. were untimely. Also, it seems almost too obvious for comment that the plaintiff would be prejudiced if such motions were sustained. He pursued his substantive rights to assert his claim under the proper statutory procedures; he properly obtained a hearing of his cause before the court below upon default; he proffered the testimony of seven witnesses (in addition to his own testimony) in support of his claim on both liability and damages; and, he is now the creditor under a substantial and final judgment. No charge is made that his conduct and that of his counsel was in any way improper or clouded with any deceit, misrepresentation or fraud. This appeal must be decided, therefore, upon the question of whether or not the trial court abused its discretion in ruling against appellant as to the first two of its grounds as set forth above.

The contention of Cook United, Inc., that it had a good and meritorious defense to plaintiff's claim, is apparently also in turn based upon two propositions; *first*, it claims, in substance, that since Ontario and not Cook United, Inc. was operating the store which was the scene of plaintiff's arrest, the doctrine of *respondeat superior* could not bind it as to any actions of the Security Officer in causing the arrest; and *second*, it claims in substance that there was probable cause for the arrest because plaintiff had the shut-off valve in his possession, for which he had not paid, and had passed all check-out counters in

the store and, in addition, he had sustained no damage by reason of the arrest and imprisonment.

As to the first of these claims, the overwhelming evidence, as above summarized, was that the store was, in fact, operated by Cook United, Inc. and all of the employees, including the arresting Security Officer, were its employees and not Ontario's. The evidence of the business manager and the various exhibits offered and received in connection therewith stand undiminished by the fact that Ontario appeared in the chain of title to the real estate and that one of the three licenses (the fee for which was paid by Cook United, Inc.) stood in Ontario's name and the conclusionary statements in the affidavit of trial counsel. At the very least, it cannot be validly said that the trial court abused its discretion in finding that Cook United, Inc. operated the store on the date of plaintiff's arrest.

As to the point raised by Cook United, Inc. that there was probable cause to make the arrest and that damages were not (or were insufficiently) established, the respondent's proof was that he had gone to the store to buy some oilcloth covering for his wife for a picnic table; that he had gone to that department and selected the oilcloth but that the sales person was then otherwise occupied so that she could not cut it, and arrangements were made for him to return in a short time for this to be done; he then went to the grocery department and en route saw the shut-off valve which he decided to buy and which was on a large display card; that he put this in his shirt pocket where it was in plain view, intending to pay the seventy-nine cent charge at some check-out stand before he left the store; that he purchased and paid for about $11.00–$12.00 worth of meat at the grocery department; that on his way back to get the oilcloth he checked on his truck, from within the store, to see that it was secure since he had several hundred

dollars worth of tools and equipment in the truck; and as he started back to the department for the oilcloth, he was arrested by the Security Officer.

The only matters before the trial court which even remotely refute this testimony of the respondent were the allegations contained in the unverified motion to set aside the judgment and the conclusionary statement in defense counsel's affidavit that "Cook United, Inc. has a meritorious defense to the referred to suit." Both such pleading and affidavit statements were necessarily based upon hearsay. Security Officer Morriss was not proffered as a live witness nor was her affidavit offered in the evidentiary hearing on the motions.

As to the elements of damages, the respondent offered substantial evidence of both actual and punitive damage, including the testimony of general contractors with whom he had done business. It cannot be said that the trial court, having heard these witnesses and the evidence, improperly entered the judgment or abused its discretion in refusing to set it aside. So this leaves for appellate decision the one remaining claim that Cook United, Inc. had good reason and excuse for the default.

The only source of information as to the cause or "excuse" for the default must be gleaned from the affidavit of George Harlan filed in connection with the post judgment motions wherein he describes himself as "agent and attorney" and "Claims Manager for Zurich Insurance Company". He states that the suit papers were received on or about July 20, 1972 (15 days before the entry of the judgment); that Zurich acknowledged receipt of the suit papers to Cook United, Inc. and that Zurich was "handling this defense for and on behalf of" Cook United, Inc; that "by error of routing, the said suit papers became intermingled with assignments to an adjuster in lieu of being assigned immediately under standing procedure to defense counsel"; that such defense was not assigned to

counsel until after the judgment; and that by reason of such "inadvertant error in routing" the entry of such judgment was not known to Zurich or defense counsel until after its entry on August 4, 1972.

■ Such facts, without more, clearly establish a lack of diligence and ordinary prudence on the part of Harlan, a responsible official of Zurich. In the case of Distefano v. The Kansas City Southern Railway Company, 501 S.W.2d 551, 553[3] (Mo.App.1973) this court characterized the action of the defendant's legal department in placing suit papers in a file drawer and forgetting them, thus permitting default, as "unmitigated negligence" and as insufficient good cause for setting aside the default judgment. Whether this inexcusable neglect of Zurich is imputable to Cook United, Inc. remains for consideration. So far as this precise question is concerned, as between an insurer and its insured, the briefs and independent research disclose no Missouri decision directly in point.

■ In the *Distefano* case, supra, this court properly held that the negligence of the legal clerk in "losing" the suit papers against his employer was imputable to the latter. There is substantial and consistent authority in Missouri that the neglect of a lawyer resulting in a default judgment against his client is imputable to the client. Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132, 142[31, 32] (banc 1952); Askew v. Brown, 450 S.W.2d 446, 450[5] (Mo.App. 1970); Culp v. Culp, 216 S.W.2d 551, 554 (Mo.App.1948); Edwards v. Rovin, 322 S. W.2d 139, 142–143[5] (Mo.App.1959).

Cook United, Inc. relies heavily upon the case of Whitledge v. Anderson Air Activities, Inc., 276 S.W.2d 114 (Mo.1955). That case is clearly distinguishable from the case at bar. In *Whitledge* the insurance carrier had never confirmed coverage but its local trial attorney had advised Anderson's regularly employed counsel that such coverage existed and that pleadings

would be filed and, thereupon, Anderson's counsel abandoned the defense without notice to Anderson. The court there held that the resulting default judgment should have been set aside *under the facts in that case*. *Whitledge* has been discussed and distinguished in a number of cases, including Askew v. Brown, supra, 450 S.W.2d at l. c. 450; Edwards v. Rovin, supra, 322 S.W.2d 139 at 1. c. 142, and Distefano v. Kansas City Southern Railway Company, supra, 501 S.W.2d at 1. c. 553. The *Whitledge* opinion and the other Missouri cases are not decisive of this appeal.

Here the misrouting of the suit papers occurred by reason of the neglect of the Claims Manager and attorney of Zurich, the judgment debtor's insurer. The record herein does not disclose the terms of the insurance contract but for the purposes of this appeal, it may be assumed that it contained the standard provisions whereby the insurer, in consideration of a premium, agreed to undertake through its own organization and trial counsel selected by it to defend Cook United, Inc. in all phases of the litigation, and, in turn, required the cooperation of its insured and retained general control over the settlement or other handling of the case. As a concomitant of this agreement, it could be implied that it would protect its insured against neglect which would result in default. There appears to be no dispute as to coverage and for these purposes it may be assumed that both Zurich and Cook United, Inc. were jointly interested in the defense of the action and that all of their respective rights be fully asserted and protected.

However, the respective rights and present or future obligations as between Zurich, the insurer, and Cook United, Inc., the insured, *inter sese* are not decisive of this matter. The only question here is whether they occupied such a position, one to the other, as to third parties such as respondent, so as to impute the inexcusable neglect of Zurich to Cook United, Inc.

The decisional law in this area has undergone a gradual change and is still not in accord. As stated in Appleman, Insurance Law and Practice, Vol. 7A, Section 4681, pp. 423–424:

"It was also early stated that an insurer which elected to exercise its right to conduct the defense was not regarded as being an agent of the insured, but was rather in the position of an independent contractor. But the more modern rule is that under such a policy provision the insurer becomes the agent of the insured."

The author adds a *caveat* in Footnote 5 at page 424 that the "relationship is more complex than will fit precisely into one of the neat niches of the law, partaking in part of an agency relationship, in part of that of an independent contractor, in many respects that of a fiduciary."

Reason and logic render impossible the acceptance of any real distinction between the inexcusable neglect of a lawyer (held in Missouri to be imputable to his client) and the inexcusable neglect of a claims manager and attorney for the defendant's insurer. Both occupy a contractual relationship with the client, the prime purpose of which is to handle the litigation within the framework of judicial proceedings. But even of more significant force is that by undertaking such responsibilities they also assume an obligation to third parties interested in the matter and to the courts administering and judicially determining the controversy.

The more persuasive decisions from other jurisdictions hold that the inexcusable neglect of an insurer is imputable to its insured. In the case of Stevens v. Gulf Oil Corporation, 108 R.I. 209, 274 A.2d 163 (1971) suit papers were lost in the home office of Travelers Insurance Company, defendant's insurer, and a default resulted. In affirming the trial court's refusal to set

the judgment aside, the court said, l. c. 164 [3, 4]:

"Travelers negligence is, we believe, imputable to Gulf. While Gulf argues that its insurer is not its agent, we disagree. It is clear that Gulf forwarded the summons and complaint to Travelers in pursuance of its insurance policy which gives the insurer control of the handling and adjustment of claims against the insured. In such circumstances, we shall adopt the principle that the insurer, by retaining control of suits brought against the insured, becomes the agent of the insured. (Cases cited)."

In accord: Tasea Investment Corporation v. Dale, 222 Md. 474, 160 A.2d 920, 923–924[4] (1960); Greitzer v. Eastham, 254 N.C. 752, 119 S.E.2d 884, 887[4] (1961); Williams v. Ray, 232 S.C. 373, 102 S.E.2d 368, 373[5] (1958); Colletti v. Schrieffer's Motor Service, Inc., 38 Ill. App.2d 128, 186 N.E.2d 659, 662[4] (1962); Greenwell v. Caro, 114 Cal.App.2d 35, 249 P.2d 573, 574[1] (1952); Richmond v. A. F. of L. Medical Service Plan, 415 Pa. 561, 204 A.2d 271 (1964); Harris v. Lebow, 363 S.W.2d 184, 186[5, 6] (Tex. Civ.App.1962); Rhodes Western v. Clarke, 14 Ariz.App. 62, 480 P.2d 677, 679[1] (1971).

Each case involving this problem must be reviewed in the light of the facts in each individual case and the ultimate point for determination upon appeal is whether or not such facts disclose an abuse of discretion or an error of law by the trial court. Since the acts of Zurich as insurer of Cook United, Inc. were imputable to its insured and since the record is devoid of any facts showing a meritorious defense or any excuse for the neglect of Zurich, it cannot be said that such an abuse of discretion or error of law appears.

The judgment is accordingly affirmed.

All concur.