

# In the Missouri Court of Appeals
# Eastern District

**DIVISION FIVE**

| | | |
|---|---|---|
| CECIL J. MCFALL, | ) | No. ED112561 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Jason M. Sengheiser |
| DAVID E. HOGAN, | ) | |
| | ) | |
| Respondent. | ) | FILED: January 28, 2025 |

Steven K. McFall, as substitute plaintiff for his deceased father, Cecil J. McFall, (collectively, "Plaintiff") obtained a default judgment against David E. Hogan ("Defendant"). Defendant argued that the default judgment was premature based on his interpretation that the handwritten year of service on the return was "2023." The trial court granted Defendant's motion to set aside the default judgment. Plaintiff appeals, claiming the year of service was actually "2022." We agree. The judgment setting aside the default judgment is reversed, and the case is remanded for reentry of the default judgment.

## Background

Plaintiff filed the petition in February 2022, alleging that Defendant negligently caused a vehicle collision that resulted in damages to Cecil McFall. The following week, Plaintiff requested issuance of a summons to be served by a special process server. Defendant did not file an answer

to the petition.  In February 2023, Plaintiff filed a notice of default hearing and this return of service:

On March 2, 2023, the trial court held a hearing and entered a default judgment against Defendant in the amount of $90,000.

Five months later, Defendant filed a motion to set aside the default judgment pursuant to Rule 74.05.[1]  He characterized the return of service as "ambiguous," asserting that it "purport[ed] to state that Defendant was personally served on either March 11, 2023 or March 1, 2023."  He argued that "service was defective" whether it was obtained on either of those dates because the trial court mistakenly entered the March 2, 2023 default judgment prematurely, either only one day after he was served or nine days before he was served.  There was good cause for setting aside the default judgment, Defendant posited, because it "was entered as the result of a mistake not attributable to [him]."  He also denied the allegations in the petition and claimed that he had "meritorious theories of defense that he intend[ed] to pursue."

---

[1] All rule references are to the Missouri Supreme Court Rules (2024).

After a hearing, the trial court granted Defendant's motion to set aside the default judgment. Plaintiff now appeals.[2]

## Standard of Review

Ordinarily, we review the trial court's ruling on a motion to set aside a default judgment under Rule 74.05(d) for abuse of discretion. *T Westfall Plaza WCR MO, LLC v. SJB Rest. Grp., LLC*, 689 S.W.3d 216, 218 (Mo. App. E.D. 2024). Although Defendant couched his motion in the "good cause and meritorious defense" language of Rule 74.05(d), his actual claim for why the default judgment should be set aside was not that he had a good reason for defaulting, but rather that he was never in default in the first place. Defendant described service as being "defective," but only in the sense that, according to his reading of the date of service on the return, he was not given the full thirty days to answer the petition before the trial court entered the default judgment. Contrary to the assertion in Defendant's motion, a trial court's "mistake" in entering a default judgment prematurely is not the type of "good cause" contemplated by Rule 74.05(d). Rather, it is the defaulting party's reason for defaulting—his or her "conduct in failing to answer or otherwise defend"—that may constitute good cause for setting aside a default judgment under Rule 74.05(d). *Steele v. Johnson Controls, Inc.*, 688 S.W.3d 192, 198-99, 199 n.12 (Mo. banc 2024).

When a defendant is not actually in default at the time a default judgment is entered—as Defendant claims is the case here—the judgment is "improper in the first place" and the Rule 74.05(d) test for setting it aside "does not apply." *Williams v. Zellers*, 611 S.W.3d 357, 367 (Mo. App. E.D. 2020). A default judgment entered against a party who was not in default is void for

---

[2] Defendant asks this Court to dismiss Plaintiff's appeal for briefing violations. While Plaintiff's brief violates certain provisions of Rule 84.04, none of those violations have impeded our review of the merits. *See Xtra Lease, LLC v. Pigeon Freight Servs., Inc.*, 662 S.W.3d 309, 312 n.1 (Mo. App. E.D. 2023). Despite its shortcomings, Plaintiff's brief sufficiently apprises this Court of the factual and legal basis of his claim of error. We decline to dismiss the appeal. *See id.* Defendant also cites Plaintiff's noncompliance with the Court's order regarding the record on appeal as a basis for dismissal, but Plaintiff has corrected that error.

lack of personal jurisdiction and must be set aside for that reason, irrespective of good cause or a meritorious defense. *See id.* at 367-68; *see also Hammond v. Hammond*, 895 S.W.2d 245, 249 (Mo. App. E.D. 1995) (setting aside a default judgment entered before the expiration of the time for filing an answer).

Whether a default judgment should be set aside because it was void for lack of personal jurisdiction is a question of law. *T Westfall Plaza*, 689 S.W.3d at 219. Therefore, this appeal is subject to de novo review*,* rather than the abuse of discretion standard, and we give no deference to the trial court's ruling. *See id.*; *Ground Freight Expeditors, LLC v. Binder*, 407 S.W.3d 138, 141 (Mo. App. W.D. 2013).

## Discussion

A defendant is required to file an answer within thirty days of service of the summons and petition, and failure to do so may result in a default judgment. Rule 55.25; Rule 74.05(a). In determining whether Defendant was actually in default when the trial court entered the default judgment on March 2, 2023, the only question before us is when he was served with the summons and petition. The answer, of course, depends on the date written on the return of service.

Special process servers, such as the one Plaintiff used in this case, are required by Rule 54.20(a)(2) to "make affidavit as to the time, place and manner of service." A return of service may be filed with the trial court, in its discretion, at any time as proof that the defendant was served. Rule 54.22(a). And, regardless of who serves the summons and petition—whether it be a special process server or an officer—the return "shall be considered prima facie evidence of the facts recited therein." Rule 54.22(a); *Xtra Lease, LLC*, 662 S.W.3d at 315-16, 316 n.4. If the special process server's affidavit states the "time, place and manner of service" as required by Rule 54.20, then the return creates a presumption of proper service. *Xtra Lease, LLC*, 662 S.W.3d at

4

315. The party challenging the return of service bears the burden of producing clear and convincing evidence that he or she was not served as set forth in the return. *Id.* at 316.

Here, the parties disagree about what date of service is written on the return that Plaintiff filed with the trial court in February 2023. Plaintiff asserts the date is March 1, 2022, creating a presumption of proper service on that date and showing that Defendant was in default when the trial court entered the default judgment a year later on March 2, 2023. According to Plaintiff, because Defendant did not present any affidavits or live testimony to support his motion to set aside the default judgment, he did not overcome the presumption of service established by the return, and the trial court should not have granted the motion. For his part, Defendant concedes the only evidence he presented at the hearing was the return itself and that he did not attempt to impeach the date of service Plaintiff claimed was proven by the return. Defendant instead contends the face of the return itself proved service occurred on a wholly different date—either March 1 or March 11, 2023—and therefore he could not have been in default when the trial court entered the default judgment on March 2, 2023. Thus, in resolving this case, we are not tasked with determining whether there was sufficient evidence to overcome the date of service established by the return, only what the date of service actually was.[3]

The special process server's handwriting on the return is not a model of penmanship. Still, it is clear the particular day of service was March 11, not March 1 as both parties suggest. There are four vertical lines in the "month/day/year" format the process server used to write the date: the

---

[3] Defendant complains that Plaintiff's argument regarding the failure to present affidavits or testimony was not preserved because he did not file a written response to the motion to set aside and did not ensure that the hearing on the motion was transcribed. He also asserts that, without a transcript, we should presume the arguments and evidence at the hearing were unfavorable to Plaintiff. It is undisputed, however, that there was *no* evidence presented at the hearing other than the return of service, which we have before us. Because our disposition of this appeal depends solely upon analysis of that document and consideration of the parties' arguments about what it contains, Defendant's complaints are of no consequence.

first line is a slash separating the month and day; the next two lines represent the numeral "11" for the day; and the fourth line is a slash separating the day and year. As to the year, the last numeral is admittedly difficult to decipher and could arguably be either a "2" or a "3." But any confusion created by that illegible numeral as to whether the year is 2022 or 2023 is easily resolved by reference to the notary public's perfectly legible handwriting at the bottom of the return, which indicates the special process server's affidavit was "[s]ubscribed and sworn before [her] on" March 23, 2022. On that date, the special process server attested under oath that he had "*served*" the petition and summons on Defendant, confirming that service had happened sometime before March 23, 2022—not that service would happen at some time in the future. Defendant has not explained how the service date could be March 2023 when the return was subscribed and sworn to before the notary public in March 2022 and filed with the trial court in February 2023.[4] Only by reading the year of service as 2022 does the face of the return as a whole make logical sense.

In *Ward v. Cook United, Inc.*, 521 S.W.2d 461 (Mo. App. 1975), the court rejected a challenge to service that, like Defendant's argument here, was based on an illogical interpretation of the face of the return. In *Ward*, the summons was directed to the corporate defendant with specific directions to the sheriff to serve the store manager at the defendant's address, which was an approved method of accomplishing personal service on a corporation. *Id*. at 468-69. The sheriff used a printed return of service form comprised of three distinct and separate forms to be used according to the method of service employed. *Id*. at 468. The sheriff utilized the first form (for personal service) and struck out some—but not all—of the lines on the second form (for substitute personal service). *Id*. In challenging the effectiveness of service, the defendant construed the

---

[4] At oral argument, Defendant maintained that it was within the trial court's discretion to have concluded that the date of service was in 2023. Again, we are not reviewing this issue under the abuse of discretion standard of review. But even if we were, we would have to conclude that the ruling was against the logic of the circumstances then before the trial court given the notary public's date.

return as proof of substitute personal service, which was not an approved method of serving a corporation. *Id*. at 466. The appellate court found this interpretation "bizarre" and "not supported or warranted by the record," reasoning that it was "obvious from the face of the return" that by using the first form, the sheriff was attempting to show personal service on the corporation, even though he had not completely stricken out the substitute service form. *Id*. at 466-68. "It is not a reasonable or natural result to conclude that the sheriff attempted . . . to make use of both the first and part of the second form to indicate service on the defendant by substituted service, in the face of specific instructions appearing on the summons." *Id*. at 469.

While this case involves a special process server, rather than a sheriff as in *Ward*, we can fathom no reason to not use the same common-sense approach in reading the face of this return. The *Ward* court found that it would have been unreasonable, unnatural and bizarre to conclude that the return showed substitute service simply because part of the form for that type of service was left intact, when other parts of the return and the summons clearly showed otherwise. Here, it would be similarly unreasonable to conclude that the date of service on the return was in March 2023 simply because a sloppy "2" could plausibly be read as a "3," when the notary public's date on the return clearly shows otherwise. Moreover, a March 2023 service date would indicate a bizarre scenario in which Plaintiff sat on the case for a year—knowing service had not been accomplished—and then attempted to obtain a default judgment by filing a return with a service date that was weeks in the future. There is, however, a more natural explanation supported by the record: after service was accomplished in March 2022, the original plaintiff died,[5] resulting in an understandable period of inactivity in the lawsuit until his son was substituted as the plaintiff in

---

[5] Though there is no date of death in the record, it is clear that Cecil McFall was still alive on April 22, 2022 because he signed an affidavit on that date.

February 2023, at which point he immediately filed the return of service and initiated default proceedings based on Defendant's failure to answer.

In sum, the return of service in this case established that service was made on March 11, 2022. By February 2023, when Plaintiff filed the return and sought the default judgment, Defendant had been in default for many months. Therefore, the March 2, 2023 default judgment was not premature. Because Defendant did not show the default judgment was void for lack of personal jurisdiction, the trial court erred in setting it aside.[6]

## Conclusion

The judgment is reversed, and the case is remanded for reentry of the default judgment that the trial court set aside.

_____
MICHAEL E. GARDNER, Judge

Thomas C. Clark, II, C.J., concurs.
John F. Newsham, Sp.J., concurs.

---

[6] In his brief, Defendant presents an alternative theory for setting the default judgment aside, claiming it was void for lack of personal jurisdiction because the summons was directed at "Daniel E. Hogan" instead of "David E. Hogan." Defendant did not include this particular claim in his motion to set aside the default judgment. Although respondents have more leeway in some cases to raise arguments for the first time on appeal, doing so here runs afoul of the rule that "a party cannot rely on one theory to set aside a judgment before the trial court then, when unsuccessful, rely upon a different theory on appeal." *Xtra Lease, LLC*, 662 S.W.3d at 314 (internal quotation marks and citation omitted). A defaulting party should not be permitted to skirt that rule simply because he or she is in the position of the respondent. In any event, Defendant has not sufficiently developed a persuasive argument to support this new theory. He acknowledges that misidentification of a defendant in the summons will not necessarily defeat jurisdiction if the summons and petition were served on the right person. Rather than argue that service was *not* on the right person, Defendant simply asserts in conclusory fashion that Plaintiff had the burden of proving "good service" before obtaining a default judgment and failed to do so.