Mary S. WOOLDRIDGE et al., Plaintiffs,

v.

BEECH AIRCRAFT CORPORATION, Defendant.

Mary S. WOOLDRIDGE et al., Plaintiffs,

v.

AVCO CORPORATION, Defendant.

Nos. 76–CV–0413–W–B–3, 76–CV–0594–W–B–3.

United States District Court, W. D. Missouri, W. D.

Nov. 13, 1979.

Marc S. Moller, Kreindler & Kreindler, New York City, for plaintiffs.

Douglas N. Ghertner, Field, Gentry, Benjamin & Robertson, Kansas City, Mo., for defendant Beech.

Thomas F. Fisher, Shughart, Thomson & Kilroy, Kansas City, Mo., for defendant Avco.

## MEMORANDUM AND ORDER

RUSSELL G. CLARK, District Judge.

These wrongful death actions are before the Court upon various motions of the parties, which have been pending for some time. Since both actions were consolidated pursuant to the Court's order of November 4, 1977 [1], the Court will pass upon the motions of all the parties in both actions, and in its discussion of those motions, will make reference to a single wrongful death action brought by the plaintiffs, Mary S. Wooldridge and Mary R. Wooldridge, against both defendants—Beech Aircraft Corporation (Beech) and Avco Corporation (Avco). Jurisdiction over the within action is conferred upon this Court by 28 U.S.C. § 1332 (1976), since plaintiff Mary S. Wooldridge is a resident and domiciliary of the State of Missouri; plaintiff Mary R. Wooldridge is a resident and domiciliary of the State of Texas; defendant Beech is a corporation organized under the laws of the State of Delaware, with its principal place of business in Wichita, Kansas; and defendant Avco is a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of Connecticut. Damages are sought for the allegedly wrongful death of Dr. Bart F. Wooldridge, deceased spouse of plaintiff Mary S. Wooldridge and son of plaintiff Mary R. Wooldridge, who suffered fatal injuries on or about September 26, 1974 when an airplane which he war ferrying from Wichita, Kansas to Sydney, Australia caught fire while in flight and crashed near Rahimyar Khan, Pakistan. The aircraft was allegedly manufactured by defendant Beech at its Wichita plant, and the engines installed in the craft were allegedly manufactured by defendant Avco.

Defendant Beech has moved for dismissal of the claims against it under Rule 12(b)(2), Fed.R.Civ.P., arguing that this Court does not have jurisdiction over it because it is not present in Missouri, nor is reached by Missouri's long-arm statute, Mo.Rev.Stat. § 506.500 (Vernon's Cum.Supp.1979). Both defendants, Beech and Avco, have filed motions seeking a change of venue under 28 U.S.C. § 1404(a) (1976) from this district, the Western District of Missouri, to the District of Kansas where plaintiffs have brought an action against both defendants, which is in all material aspects identical to the present action, styled *Mary S. Wooldridge v. Beech Aircraft Corporation and Avco Corporation (Lycoming Division)*, No. 76–190–CV (D.Kan., complaint filed Sept. 24, 1976). Defendant Avco has moved for leave of Court to amend its answer to assert the defense that plaintiffs' action is time-barred by Mo.Rev.Stat. § 516.190 (Ver-

---

1. That order was entered by the Honorable William H. Becker, Senior Judge, to whom both of the above-styled actions had been assigned, prior to the transfer of the same to this Division (III) by a July 12, 1979 order of Chief Judge John W. Oliver.

non's Cum.Supp.1979), and, alternatively, the defense that plaintiff Mary S. Wooldridge has failed to timely appropriate this action as required by Mo.Rev.Stat. § 537.080 (Vernon's Cum.Supp.1979). Avco has also moved under Rule 56, Fed.R.Civ.P., for summary judgment in its favor on the basis that plaintiffs' claims against it are time-barred by § 516.190, *supra.* Finally, Avco has moved, pursuant to Rule 14, Fed.R. Civ.P., for leave to file a third-party complaint against Garrett Corporation, AiResearch Industrial Division (Garrett), a California corporation, which Avco contends will be required to indemnify it should plaintiffs obtain judgment against Avco because Garrett allegedly manufactured the "turbo charger" components which Avco used to construct the engines that were installed in the aircraft in which plaintiffs' decedent was killed.

## I. PERSONAL JURISDICTION

Defendant Beech contends that this Court has no jurisdiction over it because it is neither physically present in Missouri, nor amenable to the jurisdiction of the state courts of Missouri. If Beech is not physically located within this judicial · district or within the State of Missouri, valid service of process could only be made under the Missouri long-arm statute, Mo.Rev.Stat. §§ 506.500 and 506.510 (Vernon's Cum.Supp. 1979). *See* Rule 4(e) & (f), Fed.R.Civ.P.; C. Wright, Handbook of the Law of Federal Courts § 64, at 304–05 & § 65 (3d ed. 1976). Three distinct issues are presented in the consideration of this Court's jurisdiction over a defendant in a diversity case such as this: (1) would Missouri courts find that the defendant maintains an office, agent, or representative in Missouri, or although not present within the state, that it has engaged in activities which render it amenable to the jurisdiction of that state's courts under its long-arm statute; (2) assuming the defendant would not be found present, but would nevertheless, be reached by the long-arm statute, does that statute, as in-

terpreted, satisfy the due process clause of the Fourteenth Amendment to the United States Constitution by premising its extension of jurisdiction over the defendant upon activities whereby the defendant made certain minimum contacts with Missouri sufficient to put the defendant on notice that it would be subject to the jurisdiction of Missouri courts and to make the exercise of personal jurisdiction reasonable; and (3) have plaintiffs properly effected service of process under Missouri statutes governing service of process? Both parties have submitted exhibits and affidavits, and the depositions of two corporate officers familiar with facts relevant to this issue have been taken.

### (1) "Corporate Presence" In Missouri

Plaintiffs claim that Beech is "present" in Missouri because Beech is "doing business" in the state. They further contend that service of process has been validly made upon Beech, as specified in Rule 4(d)(3) and (7), Fed.R.Civ.P., and Mo.Rev.Stat. § 506.-150 (Vernon's Cum.Supp.1979) by delivery of the summons and complaint to Paul Foster, assistant manager of Executive Beechcraft, Inc. (Executive), located in Kansas City, Missouri; Claudette Snelson, officer manager of Meisinger Beechcraft Sales, Inc., (Meisinger Sales) located in Chesterfield, Missouri; Mark W. Meising, Vice-President of Meisinger Beechcraft, Inc. (Meisinger Beechcraft), located in Kansas City, Missouri; and D. J. Van DenBeck, executive vice-president of the Mid-Coast Aviation Service (Mid-Coast) located at the Lambert-Field, St. Louis, Missouri airport. Each of these four companies is alleged to be a representative of Beech: Executive is described as a Beech "distributor"; Meisinger Sales is described as a Beech "agent"; Meisinger Beechcraft is described as a Beech "distributor"; and Mid-Coast is described as a Beech "service center".[2] Plaintiffs also effected service upon the Secretary of State of Missouri, James C. Kirkpatrick, under Mo.Rev.Stat. § 351.380(1) (Ver-

---

2. The various descriptions are found on the federal marshal's returns of service which are part of the record in this case.

non's 1966), apparently as a precaution should none of the four companies served be deemed representatives of or agents authorized by Beech to receive service of process.[3]

■ Rule 4(d)(3), Fed.R.Civ.P., authorizes service upon a "foreign corporation . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," and subdivision (d)(7) authorizes service "in the manner prescribed by the law of the state in which the district court is held." As subdivision (f) of Rule 4 provides, process is valid under subdivision (d)(3), barring certain exceptions inapplicable to this case, *only* if the defendant is physically present within the territorial limits of the state in which the district court is located. The general Missouri service statute which is applicable under subdivision (d)(7), is nearly identical to subdivision (d)(3) of Rule 4:

"Service shall be made . . .

(3) Upon a . . . foreign corporation . . . by delivering a copy of the summons and of the petition to an officer, partner, a managing or general agent, or by leaving the copies at any business office of the defendant with the person having charge thereof, or to any other agent authorized by appointment or required by law to receive service of process . . . ."

Mo.Rev.Stat. § 506.150(3) (Vernon's Cum. Supp.1979). The Missouri courts have construed this section to authorize service upon a foreign corporation, which, although not licensed to do business in Missouri, is in fact "doing business" in Missouri through an agent, representative, or corporate subdivision or office. See, e. g., *Ponder v. Aamco Automatic Transmission, Inc.*, 536 S.W.2d 888, 890–91 & n. 2 (Mo.App.1976); *Ward v. Cook United, Inc.*, 521 S.W.2d 461, 464–66 (Mo.App.1975); *Racine v. Blackwood Brothers Quartet, Inc.*, 448 S.W.2d 922, 924 (Mo. App.1969).

Plaintiffs claim that Beech has been "doing business" in Missouri through the various companies listed above, which they characterize as distributors and agents of Beech. In support of this claim, plaintiffs have referred the Court to various Missouri cases, and federal cases involving Beech litigation in other jurisdictions. While the federal cases provide helpful guidance on the constitutional issue of due process, they cannot serve as authorities for the construction of the Missouri statute before this Court and will not be considered as such. In addition, the Missouri state cases and the federal cases decided by federal district courts in Missouri, which plaintiff has cited, either preceded the enactment in 1967 of Missouri's long-arm statute, Mo.Rev.Stat. §§ 506.500–506.520 (Vernon's Cum.Supp. 1979), or did not consider the relationship of the "doing business" test under the long-arm statute to the "doing business" test that is applied under the general service provisions of § 506.150.

■ The Missouri Supreme Court has concluded that in enacting the new long-arm statute the Missouri legislature intended to broaden the scope of personal jurisdiction which had been exercised by Missouri courts to "that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States." *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. en banc 1970). In view of this legislative determination to vest in the courts of Missouri, through a special service statute, a jurisdiction over persons more encompassing than that which had been exercised by those courts under general service provisions, such as § 506.150, *see generally Simpkins v. Council Mfg. Corp.*, 332 F.2d 733, 736–8 (8th Cir. 1964), the Court believes that the legislature intended that a more liberal "minimum contacts" type of "doing business" test should be applied to actions brought under the new long-arm statute. See *J. F. Pritchard & Co. v. Dow Chemical of Canada, Ltd.*, 331 F.Supp. 1215, 1218 (W.D.Mo.

---

**3.** Service was also made upon Beech at its headquarters in Wichita, Kansas by hand delivery to Ila Alumbaugh, a corporate, assistant secretary of Beech.

1971), *aff'd*, 462 F.2d 998 (8th Cir. 1972) ("Section 506.500 . . . has significantly broadened the former 'doing business' concept of Missouri law . . . ."); *see generally* Comment, *Expanding Permissible Bases of Jurisdiction in Missouri: The New Long-Arm Statute*, 33 U.Mo.L.Rev. 248, 251–3 (1968). Plaintiffs do not contend that they have attempted service under the long-arm statute or that Beech is subject to jurisdiction under the provisions of that statute, although the Court will consider later the applicability of that statute as a possible basis of jurisdiction. Rather, plaintiffs have attempted to obtain valid service of process under Missouri's general service statute, § 506.150(3).

The Court's research has revealed only two Missouri cases which address the proper standard of "doing business" which should be applied in cases where service has been effected under § 506.150(3)—*Ward v. Cook United, Inc., supra* and *Ponder v. Aamco Automatic Transmission, Inc., supra.* The facts of *Ponder* are similar to those of the case at bar since Beech, like the defendant in that case, Aamco Automatic Transmission, Inc. (Aamco), does not maintain a registered agent for service of process in Missouri; has not registered as a foreign corporation for the purpose of transacting business within the state; and contends that it has no office, plant, agent or representative within the state's territorial limits. In *Ponder*, the plaintiff, an aggrieved consumer whose automobile had been serviced by a local automotive service center, brought suit against the Missouri partnership that operated the center and Aamco, which had entered into a franchise with the partnership. The plaintiff obtained service of process first upon John Hale (one of the partners), who was described on the service return as the Manager of Aamco Automatic Transmission, Inc., and secondly upon Roy Hale (the other partner), also described as the manager of Aamco. After Aamco failed to answer either petition or appear at trial, a default judgment was entered against Aamco. The judgment was set aside by the trial court, however, upon Aamco's motion, on the basis that Aamco

had not been properly served nor was subject to the court's jurisdiction. *See Ponder v. Aamco Automatic Transmission, Inc., supra*, 536 S.W.2d at 889–90.

In affirming the trial court, the appellate court found that the partnership and Aamco had only a relationship as buyer and seller, not as agent and principal. Thus, although the Court acknowledged that the franchise agreement between Aamco and the partnership contained conditions which imposed "a measure of control over the activities of the franchise", it determined that those conditions did "not [go] so far as to constitute the local outlet a mere conduit for the goods and services of the franchisor." *Id.* at 892. Since the partnership was not a branch, division or extension of Aamco, service upon the partnership was not service upon an "officer" or "agent" of Aamco within the meaning of § 506.150(3). The *Ponder* court pointed out, however, that, Aamco's relationship with the partnership did constitute "doing business" for the purpose of § 506.500, Missouri's long-arm statute:

> Although we have concluded that Aamco was *not doing business in Missouri according to the traditional concepts of due process expressed by § 506.150(3)* and therefore not amenable to the jurisdiction of the forum, *the activity* of Aamco under the franchise's agreement *was the transaction of business in this state* and afforded those minimum contacts for jurisdiction and judgment *under § 506.500.* The plaintiff made no attempt to comply with the provisions for the commencement of an action under that statute [§ 506.510; Rule 54.06] by personal service of process outside the state, thus the judgments entered . . . were without the notice of statute and without force of law. *Id.* at 893 (emphasis added)

█ The *Ponder* decision indicates that a more restrictive "doing business" test must be applied to actions that are commenced under § 506.150, which, in effect, requires that some "component" of the foreign corporation's corporate structure be physically present in Missouri. The factors that the

*Ponder* court found as a whole, were *insufficient* to demonstrate the transaction of business under a *traditional* test may be summarized as follows:

(1) the franchise agreement stated that the nonresident corporate franchisor and the franchisee were and would continue to be completely independent business entities;

(2) neither of the partners, the franchisee owners, were authorized by the corporate franchisor to act as an agent of the franchisor or to receive process on its behalf;

(3) The franchise agreement required the franchisee:

(a) to purchase equipment and materials from the corporate franchisor, which it did routinely;

(b) to submit reports to the franchisor on forms it supplied to the franchisee;

(c) to submit 7% of its total cash receipts to the franchisor;

(d) to purchase parts exclusively from the franchisor;

(e) *to offer certain guarantees to the public on its services, as designated by the franchisor;*

(f) to make available to consumers such credit and to belong to such credit organizations as the franchisor designated;

(g) to adopt certain business procedures recommended by the franchisor;

(h) to follow standards for automotive parts, which the franchisor established; and

(4) the franchisee set its hours of operation in accordance with the franchisor's wishes;

(5) the franchisor prepared and controlled all advertising, but the franchisee bore the expenses;

(6) the franchisor's name, and *only* its name, was displayed on the franchisee's premises;

(7) the franchisee controlled the selection and compensation of its employees; and

(8) the franchisee set its prices, provided consumer financing, and performed its accounting. *See* 536 S.W.2d at 892.

In the present case, while the evidence submitted by the parties does not fully clarify the relationship, if any, of Meisinger Sales, Meisinger Beechcraft, and Mid-Coast (companies upon whom service was made) to Beech, deposition testimony establishes that these companies are owned by various Missouri residents who are members of one family (Dan L. Meisinger, Sr., Dan L. Meisinger, Jr., and other relatives), and that Executive is the most significant and active of the Meisinger companies which are located in Missouri.[4] The relationship between Executive, which is located in Kansas City, Missouri, and Beech has been somewhat extensively detailed in the testimony and documents before the Court. From 1972 forward to at least the date at which this suit was commenced in 1976, Executive has existed as a Beech Aero Center under agreements executed annually by Beech and Executive, which the vice-president of Executive, Dan L. Meisinger, Jr., characterized as "franchise" agreements.[5] Like the franchise agreement in *Ponder*, the 1976 Aero Center franchise agreement specifies that Executive is not Beech's agent or legal representative for any purpose including service of process.[6]

Furthermore, the Aero Center agreement imposes various conditions on Executive, similar to those found in the *Ponder* franchise agreement. Executive is required to:

---

4. *See deposition of Dan L. Meisinger, Jr.* (taken on November 8, 1976, at pages 3–6, 22–23 [hereinafter Meisinger Deposition]). Dan L. Meisinger, Jr., vice-president of Executive, testified that Executive is the only Beech Aero Center in Missouri, and that the other Meisinger companies transact business primarily with Topeka Aircraft Sales & Service, Inc., another Meisinger Company, organized under the laws of Kansas. *Id.* at 22–23.

5. *Meisinger Deposition*, at 21.

6. Plaintiff's Exhibit 1 to Meisinger Deposition, "Sales and Service Agreement, Beech Aero Center, 1976, Sport-Sundowner-Sierra" [hereinafter, Aero Center agreement], Article IV § B, p. 11.

(1) purchase certain special tools from Beech for the maintenance of Beech planes it has sold;

(2) submit sales reports to Beech, using forms supplied by Beech;

(3) maintain and operate a flight training school, and purchase materials for that school from Beech;

(4) permit Beech to conduct inspections of its facilities and operations for the purpose of evaluating Executive's compliance with operational conditions set by Beech;

(5) maintain a service center meeting Beech standards and a supply of Beech aircraft parts;

(6) develop the "market penetration" of Beech aircraft within an assigned geographical area;

(7) use only "performance data" supplied by Beech in its sales materials and representations;

(8) file financial reports with Beech on a monthly basis, using forms supplied by Beech;

(9) send representatives to periodic meetings held at Beech headquarters in Wichita, Kansas [7];

(10) obtain Beech's consent before effecting any change in ownership or management, or any relocation of existing facilities, or investment in new facilities;

(11) display any product identification signs which Beech deems necessary;

(12) supply Beech with sales and marketing information;

(13) participate in promotional merchandising and advertising programs developed by Beech; and

(14) indemnify Beech for any liability that might attach to Beech as a result of Executive's operations.[8]

Unlike Aamco in *Ponder*, Beech *does not require* that *only its name* and *corporate trademark* be displayed on Executive's premises, although some of Executive's mechanics occasionally wear uniforms bearing Beech's insignia, and Executive has the right to and does use that insignia in its advertising and on signs on its premises. In addition, unlike the partnership in *Ponder*, Executive prepares its own advertisements, which appear in local magazines, telephone directories, and other publications, although it can purchase advertising materials and literature (and apparently sometimes does) from Beech. Another significant distinction from the *Ponder* case is that Executive is not required to submit a percentage of its gross receipts to Beech, but rather purchases aircraft at a "discount" (i. e. wholesale) price from Beech, which is apparently a uniform price offered to Beech Aero Centers throughout the United States. While Beech has listed Executive in some of its national advertisements, Aamco no doubt similarly identified the Hale partnership in the advertisements *Aamco prepared* for use by the partnership. *See* 536 S.W.2d at 892. Beech also has the right to, independent of Executive, sell aircraft to certain institutions and governmental units in Missouri, and to contact any of Executive's customers for the purpose of developing a marketing survey.[9] While variations exist between the conditions of control exercised by Beech over Executive and those exercised by Aamco over the Hale partnership, the Court believes that the degree of control in both cases is substantially similar, and, in certain respects, control is even less restrictive in the present case.

■ That Executive should not be considered an agent or representative of Beech for the purpose of § 506.150, under the

---

7. Additionally, the aircraft mechanics employed by Executive have received, among training experiences at other schools, training at Beech's headquarters in Wichita, but at Executive's expense. Meisinger Deposition, at 8–9.

8. Meisinger Deposition, at pages 31–36, 38, 42, 44, 46–50; Deposition of John A. Elliot, senior vice-president of Beech Aircraft Corporation (taken on December 16, 1976) [hereinafter, Elliot Deposition], at pages 25, 28, 36–37; Aero Center Agreement.

9. Meisinger Deposition, at 24, 27, 44–50; Elliot Deposition, at 25; Aero Center Agreement.

rationale of *Ponder*, is further illustrated by a comparison of the elements of "business independence" in both cases. Like the Hale partnership, Executive selects its employees, and determines what compensation they should receive and provides the same by drawing checks on its bank account. Although Beech provides suggested price guidelines, Executive is free to (and does) set the prices for the various Beech aircraft it sells, and the tuition for its flight training programs. Executive, unlike the Hale partnership, is free to set its hours of operation. Executive, like the partnership, performs its accounting, although Beech may offer suggestions on accounting systems. Beyond the sale of Beech aircraft and the provision of flight training programs developed by Beech, Executive offers other services (i. e., hangar rental space, tie-down [outdoor] rental space, charter service, and repairs and maintenance on aircraft manufactured by companies other than Beech) and other products (avionics or aircraft radios, aviation fuel, and used aircraft, not manufactured by Beech), while the Hale partnership apparently offered only transmission repair services, using Aamco techniques and parts. *See* 536 S.W.2d at 892. Beech has absolutely no ownership interest, direct or indirect, in Executive, or in any of the Meisinger companies.[10] "The sense of the [Beech Aero Center] agreement as a whole, as we find it, recognizes the operation of . . . [Executive] as an independent business. *Id.*[11]

The Court is further persuaded in its conclusion that plaintiffs have not obtained jurisdiction over Beech under § 506.150 by a comparison of the Executive-Beech relationship to the facts of *Ward v. Cook United, Inc.*, 521 S.W.2d 461 (Mo.App.1975), a case which the *Ponder* court distinguished. Service under § 506.150 upon a "local outlet" of a national discount house was held

valid in *Cook*, essentially because the local entity alleged to be an agent of the foreign, corporate defendant was, in fact, part of the defendant's corporate structure. As the *Ponder* court noted, the local discount store which was served was a division, or a wholly owned subsidiary of the defendant; the defendant selected the employees of the local store and compensated the employees with checks drawn on its account; and the defendant monitored the daily activity of the local store through weekly reports, directives, and other exchanges of correspondence. *Ponder v. Aamco Automatic Transmission, Inc., supra*, 536 S.W.2d at 892; *see Ward v. Cook United, Inc., supra*, 521 S.W.2d at 465–6. The local store was held out to the public as an extension of the defendant through newspaper advertisements that identified it as a "division" of the defendant. *Id.* at 465.

A contrary picture is presented in the present case. Not only is Executive not a division or subsidiary of Beech, but Beech has no ownership interest at all in Executive and none of the shareholders, officers or directors of Executive, or other Meisinger companies, hold stock in Beech.[12] As previously mentioned, Beech does not participate in the selection or compensation of Executive employees. Beech does not monitor the daily operations of Executive. In fact, Executive's vice-president testified that he places at the most only two telephone calls to Beech's headquarters in Wichita on a monthly basis; that personnel from Beech's aircraft parts division only visit Executive approximately once a year; that Beech sales personnel make similarly infrequent visits; and that only once, to his knowledge, has a Beech employee made a "demonstration" flight at Executive's airport.[13] While Executive has published advertisements displaying the Beech trademark and designating itself as a vendor of

---

**10.** Meisinger Deposition, at 29–30, 66–69, 74–76, 80–81; Elliot Deposition, at 28.

**11.** Although the Court has discussed only the Executive-Beech relationship, Dan L. Meisinger, Jr. testified that Executive was the only Meisinger company that has a direct relationship with Beech and that operates under a franchise agreement. *See* note 4 *supra*.

**12.** Meisinger Deposition, at 29–30, 71–72; Elliot Deposition, at 26–27.

**13.** Meisinger Deposition, at 9–15, 62–65.

Beech aircraft and while Beech has published advertisements identifying Executive as a "Beech Aero Center", none of these advertisements expressly or implicitly represent to the public that Executive is a local agent, division, or component of the Beech corporate structure. Absent from the facts of Beech's relationship to the Meisinger companies are the "complete control and dominance . . . over . . . [daily] activity and the employees engaged in such activity" that justified jurisdiction under § 506.150(3) in the *Cook* case. *Ward v. Cook United, Inc., supra,* 521 S.W.2d at 466.

■ It appears from the testimony of Beech's senior vice-president, John A. Elliot, that Beech has an employee, one R. H. Owens, who resides in the St. Louis, Missouri metropolitan area and serves as a "liaison" agent. Plaintiffs did not attempt to serve Owens as a general agent or officer of Beech under § 506.150(3). If the Court were to find that Owens constituted an "officer" or a "managing or general agent", plaintiffs would not now be foreclosed from obtaining jurisdiction over Beech by serving process upon Owens, since the applicable Missouri statute of limitations [14] which this Court must apply in a diversity case such as this, *see Bergstreser v. Mitchell,* 577 F.2d 22, 26 (8th Cir. 1978), has been tolled or "conditionally halted" by plaintiffs' diligent efforts to obtain proper service of process and to prosecute this case. *See Prosher v. Volkswagen of America, Inc.,* 480 F.2d 947 (8th Cir. 1973), *cert. denied,* 415 U.S. 994, 94 S.Ct. 1596, 39 L.Ed.2d 891 (1974); *Blanks v. Cantwell,* 578 S.W.2d 349, 350 (Mo.App. 1979); *Went v. Leve,* 574 S.W.2d 700, 708 (Mo.App.1978); *Votaw v. Schmittgens,* 538 S.W.2d 884, 886–7 (Mo.App.1976). However, the Court believes that under the *Ponder* and *Cook* decisions Mr. Owens cannot be deemed a "managing or general agent"

or an "officer" of Beech upon whom service could be made pursuant to § 506.150(3). Owens' duties were to maintain and facilitate an efficient flow of communications between Beech and military agencies located in St. Louis and the McDonnell Aircraft Corporation, for whom Beech performs contracting or subcontracting work at Beech's Wichita plant; but he never acted as a contracting agent in the negotiation of any Beech contracts.[15]

Although Owens has an "office" in his home, he does not maintain any formal or public office identified as a "Beech" office. Furthermore, he has only a personal residence listing in the local telephone directory. Although Mr. Elliot conceded in his testimony that a sign in Beech's headquarters building in Wichita identified St. Louis, Missouri as the site of a Beech regional office, he explained that the office to which the sign referred consisted only of Mr. Owens' liaison "operation". While the record does not establish the frequency of Owens' contacts with Beech,[16] the testimony concerning his functions does not reveal an entity held out to the public as a component of the Beech organization, as was the local discount store in the *Cook* case. It is undisputed that Owens was not authorized to receive service for Beech, and testimony further indicates that Beech has no registered agent in Missouri.[17] Consequently, the Court is compelled to conclude that under Missouri law Mr. Owens is not a general or managing agent, nor an officer, of defendant Beech for the purpose of service under § 506.150(3).

This conclusion is supported by the Eighth Circuit's decision in *Jennings v. McCall Corp.,* 320 F.2d 64 (8th Cir. 1963), wherein a soliciting agent of a nonresident defendant corporation, who supervised

---

14. Because of the Court's decisions on the issues of personal jurisdiction and venue, we do not reach the issue of the proper statute of limitations to be applied in this action.

15. Elliot Deposition, at 4–7 and 21–22.

16. Owens apparently made contacts with Beech on at least a monthly basis since Mr.

Elliot testified that he monitors communications between Beech and its contracting parties in the St. Louis area, and that he no doubt arranges personnel meetings. Elliot Deposition, at 6 and 22.

17. *Id.* at 7–8.

twenty-one salesmen, was held to not be an officer or a managing or general agent of the defendant under Missouri's traditional "doing business" test, for the purpose of Missouri's general service statute. *Id.* at 70–72. In the present case, Mr. Owens does not even solicit business for Beech, but only monitors communications pertinent to the execution of existing Beech contracts. While the agent in *Jennings* operated a rented office, which listed a telephone number in the local directory identifying it as a McCall subscription office, Owens maintains an office only in his home and has no telephone listing designating him as a Beech agent. Like the soliciting agent, Owens is "not vested with discretion in establishing prices, terms, or conditions of contracts." *Id.* at 66. Indeed, as District Judge Nangle observed of a sales representative which he found was not an officer or a managing or general agent of a nonresident corporation within the meaning of Rule 4(d)(3), Fed.R. Civ.P., Mr. Owens is "only involved in one aspect of defendant's business, and *not even that aspect which relates to the cause of action herein.*" *Calandra v. National Broadcasting Co., Inc.,* 440 F.Supp. 13, 15 (E.D.Mo.1977), *aff'd mem.,* 573 F.2d 1313 (8th Cir. 1978) (emphasis added). The facts of this case are at least as supportive, if not more so, of the conclusion reached by the *Jennings* and *Calandra* courts as were the facts of those cases.[18]

Furthermore, the Court notes that *Jennings* is somewhat responsive to plaintiffs' claim that Executive should be treated as an agent of Beech upon whom service could be made because of the quantity of Beech business (i. e., monetary amount) which Executive transacts through its sale of Beech aircraft. Plaintiffs point out that, while the sales representatives' activities in Missouri, in *Jennings,* produced $290,400 of McCall pattern receipts in one year, Beech receives a more significant amount of annu-al revenues from Missouri through the sale of Beech aircraft, since just one of Beech's various aircraft may cost approximately $320,000. While the record does not establish the level of Beech aircraft sales by all of the Meisinger companies as a whole, testimony indicates that Executive, the most significant and active of these companies, sold 5 new Beech planes in 1976 at an aggregate sales price of $635,000.[19] This figure of course represents gross revenues received by Executive from Beech sales, and not the amount received by Beech (i. e. the "wholesale" price of the Beech planes). Moreover, plaintiffs failed to note the *Jennings* court's observation that the *total* "subscription business in Missouri" of the defendant in that case "amounted to $1,051,000". 320 F.2d at 66. The Court believes, however, that the amount of revenues generated by sales of the defendant's products in Missouri is not a decisive factor, since the *Jennings* court did not treat it as such. *See id.* at 70–72.

Since the Court has determined that Beech has no officers, managing or general agents, or divisions in Missouri upon whom service could have been made under § 506.150(3), plaintiffs' service of process upon the Secretary of State of Missouri, pursuant to Mo.Rev.Stat. § 351.380, as "substituted service" upon Beech is not effective to confer jurisdiction upon this Court. That section, which is one of the provisions governing general and business corporations found in Chapter 351 of Missouri's statutes, is only applicable to corporations which are "doing business" in Missouri. *See generally Kinnear Mfg. Co. v. Myers,* 452 S.W.2d 599, 603 (Mo.App.1970); *State v. Jensen,* 359 S.W.2d 343 (Mo. en banc 1962). In addition, this Court does not have jurisdiction over Beech under Rule 4(d)(3), Fed.R.Civ.P. While the Court acknowledges that, as to the procedural meth-

---

18. We do not believe that *Williams v. Campbell Soup Co.,* 80 F.Supp. 865 (W.D.Mo.1948), compels a contrary result to the conclusions the Court has reached as to the status of the Meisinger companies and Mr. Owens, since the facts of that case are distinguishable, and, more significantly, since the more recent opinions of two Missouri appellate courts, *Cook* and *Ponder, supra,* support, if not mandate, these conclusions.

19. Meisinger Deposition, at 57–59.

od of service under Rule 4(d)(3), the determination whether any of the Meisinger companies or Mr. R. H. Owens is so closely "integrated with" Beech to be deemed an officer, or managing or general agent, of Beech is to some extent governed by federal law, *see* C. Wright, *supra* § 64, at 301; 4 C. Wright & A. Miller, Federal Practice and Procedure §§ 1101–03 (1970), we believe that the foregoing discussion of the comparable "officer, partner, a managing or general agent" language of Mo.Rev.Stat. § 506.150 indicates that none of the Meisinger companies or Mr. Owens occupied such a position, since they were not "acting in a capacity that permit[ted] [them] to accept service." C. Wright, *supra* § 64, at 301. A similar result was reached by the Eighth Circuit in *Jennings, supra, see* 320 F.2d at 72, and by Judge Nangle in *Calandra, supra, see* 440 F.Supp. at 14. In this connection, the Court notes that the amenability of a foreign corporation to the jurisdiction of a federal district court should be controlled by the law of the state in which the federal court sits. *See Simpkins v. Council Mfg. Corp., supra,* 332 F.2d at 736; *Arrowsmith v. United Press International,* 320 F.2d 219, 223–31 (2d Cir. 1963).

### (2) Minimum Contacts: Missouri's Long-Arm Statute

Although plaintiffs have not expressly argued that Beech is amenable to the jurisdiction of Missouri's courts (and, thereby, to the jurisdiction of this Court) under Missouri's long-arm statute, Mo.Rev.Stat. § 506.-500 (Vernon's Cum.Supp.1979), they have contended that service was effected upon Beech pursuant to Rule 4(d)(7), Fed.R. Civ.P., which makes that statute applicable.

Section 506.500 provides:

§ 506.500 Actions in which outstate service is authorized.

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state *as to any cause of action arising from the doing of any of such acts* :

(1) The *transaction of any business* within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state;

(4) The ownership, use, or possession of any real estate situated in this state;

(5) The contracting to insure any person, property or risk located within this state at the time of contracting.

2. *Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section. Id.* (emphasis added).

As the passage which the Court previously quoted from the *Ponder* opinion indicates, *see Ponder v. Aamco Automatic Transmission, Inc., supra,* 536 S.W.2d at 893, the nature of Beech's relationship to Executive and its activity under the franchise agreement with Executive, like "the activity of Aamco under the franchise agreement[,] was the transaction of business in this state [Missouri] and afforded . . . minimum contacts for jurisdiction . . . under § 506.500." *Id.* However, although the Beech-Executive relationship clearly constitutes the "transaction of business" in Missouri under the liberal construction which Missouri courts have applied to that language in § 506.500–1(1), *see e. g., State ex rel. Farmland Indus., Inc. v. Elliot,* 560 S.W.2d 60, 62–3 (Mo.App.1977), and even though Beech has admittedly entered into production contracts with the McDonnell Aircraft Corporation and government agencies in St. Louis and, as Beech's senior vice-president testified, into an advertising contract with a firm in Kansas City, Missouri,[20] the Court finds that the cause of

---

20. The advertising firm with which Beech reportedly contracted was the Bruce B. Brewer firm of Kansas City. Elliot Deposition, at 34.

action asserted by plaintiffs does not arise out of any of these activities of Beech as required by the language of § 506.500–2, which is highlighted in the above quotation.

The cause of action in this case arises from the death of Dr. Bart F. Wooldridge, plaintiffs' decedent, who suffered fatal injuries when the aircraft which he was piloting caught fire and crashed in Pakistan. It appears from an examination of the record[21] that the plane Dr. Wooldridge was piloting was a new Beech aircraft (the "Duke" model) which had been purchased by an Australian business organization, Hawker de Havilland Australia Pty. Ltd. (Hawker) located in Yagoona, Australia. Beech made delivery of the aircraft on September 12, 1974, in Wichita, to Aircraft Facilities International, Inc. (Aircraft Facilities), a Kansas Corporation which is engaged in the business of transporting aircraft to foreign purchasers. While the factual circumstances surrounding the Hawker-Beech contract for the purchase of the plane and the Beech-Aircraft Facilities relationship regarding the transportation of new Beech aircraft to foreign purchasers are not fully developed, plaintiffs have not suggested, nor does the record demonstrate, that the negotiation, execution, or performance of any contract associated with the sale of the aircraft in which Dr. Wooldridge died occurred in Missouri.

Furthermore, Dr. Wooldridge's contractual relationship of employment with Aircraft Facilities appears to have been confined, in all significant respects, to Kansas. Concerning the tragic flight from which this suit arose, plaintiff Mary S. Wooldridge, the spouse of Dr. Wooldridge, stated in one of her interrogatory answers that her husband traveled from their Joplin, Missouri residence to the premises of Aircraft Facilities in Wichita, from which he departed on his flight to Australia. Apart from the possibility that Dr. Wooldridge may have passed through Missouri's air space while en route to Boston, Massachusetts (one of the cities at which he stopped on his flight to Australia), a circumstance of little significance, the activities out of which this suit arose occurred wholly outside the state of Missouri.

Since none of the activities of Beech, which are the basis of this action, occurred in Missouri, the unambiguous language of § 506.500–2 compels the inescapable conclusion that Beech is not subject to this Court's jurisdiction under the long-arm statute. The proposition that Missouri courts will exercise long-arm jurisdiction over a nonresident defendant only if some portion of its "minimum contacts" with, or activities within, Missouri gives rise to the action asserted gained a significant acceptance prior to the passage of § 506.500 and was applied in long-arm actions under Missouri's general service statute. *See Morrow v. Caloric Appliance Corp.*, 372 S.W.2d 41, 45–6 (Mo. en banc 1963); *Collar v. Pennisular Gas Co.*, 295 S.W.2d 88, 92 (Mo.1956); *Hayman v. Southern Pacific Co.*, 278 S.W.2d 749, 752–3 (Mo.1955); accord, *Simpkins v. Council Mfg. Corp.*, supra, 332 F.2d at 736–37; *Jennings v. McCall Corp.*, supra, 320 F.2d at 70–2; *Fiore v. Family Publications Service*, 157 F.Supp. 572, 575 (E.D.Mo.1957); *Pucci v. Blatz Brewing Co.*, 127 F.Supp. 747, 750 (W.D.Mo.1955); *see generally* Anderson, *Personal Jurisdiction Over Outsiders*, 28 U.Mo.L.Rev. 336, 370–380 (1963).

Subsequently, in all the cases in which § 506.500 has been applied to confer jurisdiction over a nonresident defendant, the causes of action arose from defendants' activities in Missouri.[22] Moreover, the Missouri Supreme Court expressly approved

---

21. The Court has examined documents which Beech attached to its motion for dismissal, Beech's responses to plaintiffs' request for admissions, and plaintiffs' answers to defendant Avco's interrogatories, which are part of the record of these consolidated actions and are relevant to the jurisdictional issue under consideration here.

22. *See Commerce Bank of University City v. Edco Financial Services, Inc.*, 503 F.2d 1047 (8th Cir. 1975) (suit arising out of defendant's business transactions in Missouri); *Fulton v. Chicago, Rock Island & Pac. R. Co.*, 481 F.2d 326 (8th Cir.), cert. denied, sub nom. *Soo Line R. Co. v. Fulton*, 414 U.S. 1040, 94 S.Ct. 540, 38 L.Ed.2d 330 (1973) (suit on tort occurring "in part" in Missouri); *Smith v. Manor Baking Co.*,

the proposition embodied in Paragraph 2 of § 506.500 in *State ex rel. Bank of Gering v. Schoenlaub*, 540 S.W.2d 31 (Mo. en banc 1976), wherein it held that Missouri courts could not exercise long-arm jurisdiction over a nonresident bank whose only contact with Missouri was the return of bank drafts drawn upon it to a local Missouri bank, because the defendant was not present in Missouri, and the activity which gave rise to plaintiff's suit—the bank's failure to timely notify plaintiff of dishonor of some of the drafts—could only have occurred outside Missouri at the defendant's Nebraska office:

> 418 F.Supp. 150 (W.D.Mo.1976) (employment discrimination suit arising from nonresident defendant's alleged supervision over employees of its subsidiary located in Missouri); *First National Bank of Kansas City v. Ward*, 380 F.Supp. 782 (W.D.Mo.1974) (suit on promissory note executed in Missouri); *J. F. Pritchard & Co. v. Dow Chem. Co. of Canada, Ltd.*, 331 F.Supp. 1215 (W.D.Mo.1971), aff'd., 462 F.2d 998 (8th Cir. 1972) (suit arising from contract which was negotiated and executed in part in Missouri); *American Hoechst Corp. v. Bandy Laboratories, Inc.*, 332 F.Supp. 241 (W.D.Mo. 1970) (suit on contract which was negotiated in part at business conference in Missouri); *Adams Dairy Co. v. National Dairy Prods. Corp.*, 293 F.Supp. 1135 (W.D.Mo.1968) (private antitrust action arising from individual defendant's personal activities in Missouri in course of transacting business); *State ex inf. Danforth v. Reader's Digest Ass'n., Inc.*, 527 S.W.2d 355 (Mo. en banc 1975) (quo warranto proceeding arising out of defendant's promotion of the sale of magazines and merchandise by mass mailing campaign to Missouri residents); *Empire Gas, Inc., of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657 (Mo.1974) (negligence action arising out of defendant's activities in Missouri); *State ex rel. Deere & Co. v. Pinnell*, 454 S.W.2d 889 (Mo. en banc 1970) (action arising out of injuries resulting from defendant's defective product which was marketed in Missouri); *Scheidegger v. Greene*, 451 S.W.2d 135 (Mo. 1970) (action arising out of tort allegedly committed by defendant in Missouri); *Shady Valley Park & Pool, Inc. v. Dimmie*, 576 S.W.2d 579 (Mo.App.1979) (action arising out of promissory note executed in Missouri); *State ex rel. Farmland Indus., Inc. v. Elliot*, 560 S.W.2d 60 (Mo.App.1977) (action arising out of contract negotiated in Missouri); *State ex rel. People's Bank of Bloomington v. Stussie*, 536 S.W.2d 934 (Mo.App.1976) (same); *State ex rel. Apco Oil Corp. v. Turpin*, 490 S.W.2d 400 (Mo.App. 1973) (action for damages resulting from defendant's defective product which was marketed in Missouri); *Servo Equip. Co. v. C. M.*

"We cannot believe that the legislature in enacting Section 506.500 intended that it would apply to the factual situation before us. To do so would mean that a nonresident bank could be sued in Missouri *for acts wholly performed in the state of its residence* in the usual course of conducting its banking business." 540 S.W.2d at 35 (emphasis added).

The *Schoenlaub* decision [23] reinforces the Court's determination that Beech is not subject to long-arm jurisdiction in Missouri.[24] This conclusion, along with the Court's earlier decision regarding Missouri's general

> *Lingle Co.*, 487 S.W.2d 869 (Mo.App.1972) (action arising out of contract negotiated and executed in Missouri); *Continent Foods Corp. v. National Northwood, Inc.*, 470 S.W.2d 315 (Mo. App.1971) (same); *State ex rel. Birdsboro Corp. v. Kimberlin*, 461 S.W.2d 292 (Mo.App. 1970) (action for damages resulting from defendant's defective product, which was marketed in Missouri).

**23.** The Missouri Supreme Court's most recent jurisdictional decision, *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377 (Mo. en banc 1979), adds further support to our conclusion that Missouri courts would not exercise long-arm jurisdiction in this case. The *Clymer* court expressed its unwillingness to embrace a broad "effect" test for the exercise of long-arm jurisdiction, i. e., an approach which finds a defendant is amenable to the jurisdiction of a state's courts when the defendant's out-of-state activities have caused some "effect" within the state. *See id.* at 382–3; *see generally* Note, *The Long Arm Reach of the Courts Under the Effect Test After* Kulko v. Superior Court, 65 U.Va.L.Rev. 175, 188–95 (1979). In the present case, while Beech's alleged activities in the sale of a plane, in Kansas, to an Australian purchaser ultimately had an "effect" on Missouri residents (the family of the deceased Dr. Wooldridge), those activities did not "caus[e] an injury within the state." 581 S.W.2d at 382.

**24.** The Court's determination that plaintiffs' cause of action did not arise from any of Beech's activities within Missouri, as required under § 506.500–2, fortifies our earlier determination that Beech is not physically present in Missouri within the meaning of § 506.150. *See Calandra v. National Broadcasting Co., Inc., supra*, 440 F.Supp. at 15. *But see Vilter Mfg. Co. v. Rolaff*, 110 F.2d 491, 497 (8th Cir. 1940) ("The great weight of authority recognizes the validity of service on an *actual agent* of a foreign corporation *doing business* in a state

service statute, § 506.150, makes it unnecessary for the Court to reach the constitutional issue of due process and the procedural issue of the method of service. We note, however, that the exercise of personal jurisdiction over Beech would not offend due process because "the quality and nature" of Beech's contacts with Missouri manifests that Beech has "purposefully avail[ed] [it]self of the privilege of conducting activities within the forum State," *Kulko v. Superior Court of California*, 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132, 142 (1978) [quoting *Hanson v. Denekla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283, 1298 (1958)], and thus, that it would be " 'reasonable' and 'fair' to require [Beech] to conduct [its] defense in [this] State." *Hutson v. Fehr Bros., Inc.*, 584 F.2d 833, 836 (8th Cir. 1978), *cert. denied*, 439 U.S. 983, 99 S.Ct. 573, 58 L.Ed.2d 654 (1979) [quoting *Kulko v. Superior Court of California, supra*, 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945))].[25] Nevertheless, "[n]onviolation of due process is not a substantial reason for subjecting a foreign corporation to a diversity suit arising under state law where the state court itself would not assert jurisdiction." *Jennings v. McCall Corp., supra*, 320 F.2d at 69–70; *see Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303, 1309 (8th Cir. 1977); *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1179 (8th Cir. 1974); *Simpkins v. Council Mfg. Co., supra*, 332 F.2d at 736.

It has been held that a substantial "federal interest in providing a convenient forum for the adjudication of plaintiffs' actions" supports the exercise of personal jurisdiction by a federal court in a diversity case, notwithstanding the plaintiffs' inability to satisfy a state long-arm statute which, like the Missouri statute, requires that the cause of action arise from the defendant's contacts with or activities in the forum state. *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 66 (4th Cir. 1965). As the Court's discussion below of the venue issue indicates, no such substantial federal interest is present in this case, *compare Bumgardner v. Keene Corp., Forty-Eight Insulation, Inc.*, 593 F.2d 572, 573 (4th Cir. 1979); and, more importantly, the decisions of Eighth Circuit cited above indicate that this Court is not free to neglect the substantive principles of personal jurisdiction found in the statutes of Missouri and enunciated by that state's courts.[26] "A federal court can do no more than attempt to predict what the state appellate courts would decide if they are presented with same facts." *Interstate Paper Corp. v. Air–O–Flex Equip. Co.*, 426 F.Supp. 1323, 1327 (S.D.Ga.1977). After a thorough examination of Missouri law, we have concluded that Missouri courts would not exercise personal jurisdiction over Beech, and therefore, this Court also lacks jurisdiction over Beech.

## II. VENUE

■ Both defendants, Beech and Avco, have moved for a change of venue in this

although the transactions out of which the cause of action arose occurred in some other state than the state where the suit is pending.") (emphasis added).

25. The Court notes further that plaintiffs have effected out-of-state service upon a Beech official in Wichita, *see* note 3 *supra*, which apparently would satisfy the procedural method of service required under Missouri's long arm statute. *See* Mo.Rev.Stat. § 506.510 (Vernon's Cum.Supp.1979); *see generally State ex rel. Northwest Arkansas Produce v. Gaertner*, 573 S.W.2d 391, 395–6 (Mo.App.1978).

26. *Accord H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 551 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *Washington v. Norton Mfg., Inc.*, 588 F.2d 441, 444 (5th Cir.), *cert.*

*denied*, —— U.S. ——, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193, 195 (4th Cir. 1976); *Arrowsmith v. United Press International*, 320 F.2d 219, 223–31 (2d Cir. 1963); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 563 (M.D.N.C.1979); *Indianola Prod. Credit Ass'n. v. Burnette-Carter Co., Inc.*, 450 F.Supp. 303, 306 (N.D.Miss.1977); *Marketing Showcase, Inc. v. Alberto-Culver Co.*, 445 F.Supp. 755, 758 (S.D.N.Y.1978); *Fieldcrest Mills, Inc. v. Mohaseo Corp.*, 442 F.Supp. 424, 426 (M.D.N.C.1977); *Microelectronic Systems Corp. of America v. Bamberger's*, 434 F.Supp. 168, 169 (E.D.Mich.1977); *Damon Coats, Inc. v. Munsingwear, Inc.*, 431 F.Supp. 1303, 1306 (E.D.Pa.1977); C. Wright, *supra* § 64, at 303–04.

action from this Court to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a) (1976). Although the Court has determined that it does not have in personam jurisdiction over Beech, this finding does not preclude the transfer of plaintiffs' action against Beech to a district where Beech is amenable to jurisdiction and where venue is proper. *See Taylor v. Love*, 415 F.2d 1118, 1120 (6th Cir. 1969), *cert. denied*, 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 297–8 (5th Cir. 1963); *Coats Co., Inc. v. Vulcan Equip. Co., Inc.*, 459 F.Supp. 654, 659 (N.D. Ill.1978); 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3844, at 211 (1976); *see generally* 28 U.S.C. § 1406(a) (1976). The Court notes, however, that lack of jurisdiction over Beech, along with other circumstances, strongly counsels the transfer of both of these cases to the District of Kansas.

█ "A motion for transfer under 28 U.S.C. § 1404(a) is addressed to the discretion of the trial court . . . ." *Layne-Minnesota p.r., Inc. v. Singer Co.*, 574 F.2d 429, 434 (8th Cir. 1978); *see Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504–8, 67 S.Ct. 839, 91 L.Ed. 1055, 1060–2 (1947). Section 1404(a) sets forth three factors to be considered in ruling a motion for transfer: "For the [1] convenience of the parties and [2] witnesses, [3] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1976) (bracketed numbers added). These considerations, however, are not exhaustive, *see Securities & Exch. Comm. v. Page Airways, Inc.*, 464 F.Supp. 461, 463 (D.D.C.1978), and among additional factors are: "practical problems that make trial of a case easy, expeditious and inexpensive", *Gulf Oil Corp. v. Gilbert, supra*, 330 U.S. at 508, 67 S.Ct. at 843, 91 L.Ed. at 1062, such as access to sources of proof and availability of compulsory process for witnesses and expenses attendant to the production of witnesses; "the relative advantages and obstacles to fair trial", *J. F. Pritchard & Co. v. Dow Chem. of Canada, Ltd.*, 462 F.2d 998,

1000 (8th Cir. 1972) (opinion per Justice Clark); and "the relative congestion of the calendars of the potential transferee and transferor courts." *Securities & Exch. Comm. v. Page Airways, Inc., supra*, 464 F.Supp. at 463. The Court recognizes that the doctrine of *forum non conveniens* embodied in § 1404(a) does not authorize a court to override a plaintiff's choice of forum, unless a balance of relative considerations, such as those enumerated above, tips toward the defendant. See *Augustin v. Mughal*, 521 F.2d 1215, 1217 (8th Cir. 1975); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Stinnett v. Third Nat'l Bank of Hampden City*, 443 F.Supp. 1014, 1017 (D.Minn.1978); *see generally* 15 C. Wright, A. Miller & E. Cooper, *supra* § 3848. An examination of the circumstances in this case, however, reveals a balance tipping decidedly in favor of transfer.

█ Several months after plaintiffs brought this action against Avco and Beech, plaintiff Mary S. Wooldridge commenced an almost identical action against both defendants in the United States District Court for the District of Kansas, styled *Mary S. Wooldridge v. Beech Aircraft Corp. and Avco Corp. (Lycoming Division)*, No. 76–190–CV (D.Kan. complaint filed Sept. 24, 1976). Plaintiffs' counsel explained, in an affidavit filed in opposition to defendants' requested change of venue, that the Kansas suit was filed because plaintiffs were concerned that this Court might grant the then pending motion of Beech for dismissal on the basis of a lack of personal jurisdiction. Plaintiffs thus acknowledged that the District of Kansas was a proper forum in which to pursue this suit, since both Avco and Beech are subject to in personam jurisdiction in Kansas. Both defendants have filed answers in the Kansas action, and while proceedings have been temporarily delayed pending the disposition of substantive motions before this Court, discovery has been conducted. Thus it is clear that the present action "might have been brought", § 1404(a) *supra*, in Kansas, *see McCoy v.*

*United States Bd. Of Parole*, 537 F.2d 962, 965 (8th Cir. 1976), and that Kansas is "a suitable alternative forum." *Schrieber v. Allis-Chalmers Corp.*, 448 F.Supp. 1079, 1084 (D.Kan.1978); *see Hoffman v. Blaski*, 363 U.S. 335, 343–4, 80 S.Ct. 1084, 4 L.Ed. 1254, 1262 (1960). Venue is proper in the District of Kansas, because it is undisputed that both Beech and Avco are doing business in Kansas and thus both are deemed to "reside" in that district. 28 U.S.C. § 1391(a) (1976)[27]; *see Munsingwear, Inc. v. Damon Coats, Inc.*, 449 F.Supp. 532, 536 (D.Minn.1978) ("A defendant corporation is considered a resident of each state where it is incorporated, is licensed to do business, or is doing business."); *Tenneco Oil Co. v. Elynnwood Supply Co.*, 431 F.Supp. 104, 105 (W.D.Okl.1977).

Plaintiffs have argued that transfer will accomplish no appreciable improvement in convenience for defendants, since the majority of their witnesses are not residents of either Missouri or Kansas. They note further that defendants, corporations which are "national" in character and prominence, will suffer no hardship if they are required to defend this suit in the present forum. The Court has no quarrel with plaintiffs' assessment of the convenience of this forum and of the District of Kansas, but we also believe that plaintiffs will suffer no disadvantage should they be required to prosecute this case in the District of Kansas. Plaintiffs have contended that retention of venue by this Court will facilitate the presentation of their case, because plaintiff Mary S. Wooldridge is a Missouri resident;[28] several Joplin, Missouri residents will be called to testify on the issue of

damages; and the possibility exists that this action would be tried in the Wichita division of the District of Kansas, where a considerable percentage of the area residents are Beech employees, *see Quandt v. Beech Aircraft Corp.*, 317 F.Supp. 1009, 1012 (D.Del.1970), a circumstance which would unduly prejudice plaintiffs' right to a fair trial. However, since plaintiffs' Kansas action is pending before District Judge O'Connor in Kansas City, Kansas, a court which is separated from this Court by only the territorial boundary of the Missouri River, a mere geographical distance of approximately five miles, and, perhaps, token loyalties to area collegiate athletic teams, transfer to the Kansas City, Kansas Division would be appropriate and would obviate plaintiffs' concerns.

Although the convenience of the parties and the witnesses will not be enhanced by transfer of this action, but will remain substantially equal to that afforded by this forum, the interest of justice in the efficient use of judicial resources and the benefit which all the parties would derive from the prevention of unnecessary duplication of time, effort, and money weigh heavily in favor of transfer. If the cases comprising this consolidated action were not to be transferred, lack of jurisdiction over Beech would compel dismissal of the complaint against it and only Avco would remain as a defendant in this action. Plaintiffs would then be proceeding in this Court against Avco while simultaneously prosecuting a highly similar, if not identical, action against both Avco and Beech in the District of Kansas.[29] It is widely recog-

---

**27.** Section 1391(a) provides:

"A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in *the judicial district where* all plaintiffs or *all defendants reside*, or in which the claim arose." 28 U.S.C. § 1391(a) (emphasis added).

Subsection (c) of § 1391 suggests the definition which should be attached to the term "resides", at least insofar as a corporate defendant is concerned:

"A corporation may *be sued* in any judicial district in which it is incorporated or licensed

to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

28 U.S.C. § 1391(c) (emphasis added); *see generally* 15 C. Wright, A. Miller & E. Cooper, *supra* § 3811.

**28.** Plaintiff Mary R. Wooldridge is a resident and domiciliary of Texas.

**29.** The only distinction the Court perceives between this consolidated action and the Kansas action is that Mary R. Wooldridge, the decedent's mother, is not named as a plaintiff in the

nized that "an action should not be split between two districts", *F.T.C. v. MacArthur*, 532 F.2d 1135, 1143 (7th Cir. 1976) (citations omitted); *see Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 739 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); 15 C. Wright, A. Miller & E. Cooper, *supra* § 3854, at 280–7. "Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pretrial proceedings and discovery and avoids duplicitous litigation and inconsistent results." *National Super Spuds, Inc. v. New York Mercantile Exch.*, 425 F.Supp. 665, 667 (S.D.N.Y.1977), *appeal dismissed for lack of juris.*, 591 F.2d 174 (2d Cir. 1979); *see Jacobs v. Tenney*, 316 F.Supp. 151, 169 (D.Del. 1970). Accordingly, the Court concludes that this action—consisting of two cases— should be transferred from this judicial district to the adjacent District of Kansas, Kansas City, Kansas Division, because it may then be consolidated with the Kansas action pursuant to Fed.R.Civ.P. 42(a) should Judge O'Connor so determine, and, because, in any event, it will proceed to an efficient and consistent resolution along with the Kansas action. *See Securities & Exch. Comm. v. Page Airways, Inc.*, *supra*, 464 F.Supp. at 465; *In re First Nat'l Bank, Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litigation*, 451 F.Supp. 995, 998 (Jud.Pan.Mult.Lit. 1978); *Leonhart v. McCormick*, 395 F.Supp. 1073, 1079 (W.D.Pa.1975).

Plaintiffs have indicated concern over the law which will be applicable to this action should it be transferred to the District of Kansas. It is well settled that a § 1404(a) transfer should not result in a change in the substantive law governing the disposition of the transferred action, if venue and jurisdiction were proper in the transferor court. *See Van Dusen v. Barrack*, 376 U.S. 612, 639–40, 84 S.Ct. 805, 11 L.Ed.2d 945, 962–3 (1964); *Glick v. Ballentine Produce, Inc.*, 343 F.2d 839, 842 (8th Cir.), *cert. denied*, 382 U.S. 891, 86 S.Ct. 184, 15 L.Ed.2d 149 (1965); 15 C. Wright, A. Miller & E. Cooper, *supra* § 3846, at 232–3. However, if a plaintiff has brought his action in an improper forum, as plaintiffs have against defendant Beech, where venue is improper or the court has no in personam jurisdiction over the defendant, the law of the state in which transferee court is located, and not that of the transferor court's state, should control the transferred action. *See Geehan v. Monahan*, 382 F.2d 111, 113–5 (7th Cir. 1967); *Schreiber v. Allis-Chalmers Corp.*, *supra*, 448 F.Supp. at 1084–5 (citing Note, *Choice of Law in Federal Court After Transfer of Venue*, 63 Cornell L. Rev. 149, 160 n. 57 [1977]). We leave the application of these principles and the familiar choice-of-law rules, *see Day & Zimmerman, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

Kansas action. The decision by Mary R. Wooldridge not to enter the Kansas suit may in some way reflect her belief that she was not entitled to recover under the wrongful death statute which would be applicable under Kansas choice-of-law principles. *See generally*, Collister, *Wrongful Death and the Choice-of-Law Problem*, 13 U.Kan.L.Rev. 529 (1965). On the other hand, her participation as a plaintiff in these Missouri actions may stem from her belief that the Missouri wrongful death statute might be applicable under Missouri choice-of-law principles, *see generally* Note, *Conflict of Laws-Missouri Takes A New Approach to an Old Problem*, 35 U.Mo.L.Rev. 91 (1970), and that only she might be able to recover under that statute should the decedent's widow, Mary S. Wooldridge, be barred for failure to timely commence suit within one year of the decedent's death. *See* Mo.Rev.Stat. § 537.080 (Ver-

non's Cum.Supp.1979). Speculation is unnecessary, however, because this circumstance is not significant to the transfer decision. Regardless of which state's wrongful death statute applies in the Kansas action or in this one, that of Kansas (where the aircraft was manufactured), Missouri (where the decedent's family resides), Pennsylvania (where the aircraft's engines were manufactured at Avco's Lycoming Division), or Pakistan (where the aircraft crashed causing fatal injuries to the decedent), only *one* recovery may be obtained by a representative of the decedent's estate or a close heir. *See* Kan.Stat.Ann. §§ 60–1901 to –1905 (Vernon's 1967 & Supp.1978); Mo.Rev.Stat. § 537.080 (Vernon's Cum.Supp.1979); 12 Pa. Cons.Stat.Ann. §§ 1601–02 (Purdon's 1967); Fatal Accidents Act of 1855, Pakistan Act No. XIII (1855).

61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Glick v. Ballentine Produce, Inc., supra,* 343 F.2d at 842, to Judge O'Connor who we are confident will, upon transfer, uphold any "substantive law" rights to which any of the parties may be entitled. Plaintiffs will not be deprived of any benefits they sought to gain through "forum-shopping", because they were not entitled to bring their suit against Beech in this Court. *See generally* Abramson, *Where to Sue in Aviation Products Liability Cases,* 40 J. Air Law & Com. 369, 404–410 (1974).

## CONCLUSION

▮ This Court cannot exercise in personam jurisdiction over defendant Beech because Beech is not amenable to the jurisdiction of Missouri's courts. While Avco has not challenged this Court's jurisdiction, considerations of judicial economy and efficiency of litigation instruct that plaintiffs' action against Avco, along with its action against Beech, should be transferred to the District of Kansas where a highly similar action brought by plaintiff Mary S. Wooldridge against both defendants is currently pending. However, rather than enter an order of transfer which would become effective immediately, we will follow the directive of the Eighth Circuit and temporarily stay the execution of the order of transfer so that plaintiffs will have the opportunity to pursue an appeal of this decision prior to a transfer of this action. *See Technitrol, Inc. v. McManus,* 405 F.2d 84, 86 (8th Cir. 1968), *cert. denied,* 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969); *see generally,* 15 C. Wright, A. Miller & E. Cooper, *supra* § 3846, at 228–30. The decision to transfer removes from this Court's consideration Avco's motion to amend its answer, its motion for summary judgment, and its motion to file a third-party complaint.

In accordance with the foregoing discussion it is hereby

ORDERED that plaintiffs' causes of action styled *Mary S. Wooldridge and Mary R. Wooldridge v. Beech Aircraft Corporation,* No. 76–CV–0413–W–B–3, and *Mary S. Wooldridge and Mary R. Wooldridge v.*

*Avco Corporation (Lycoming Division),* No. 76–CV–0594–W–B–3 be transferred to the United States District Court for the District of Kansas, Kansas City, Kansas Division, forty-five days from the date of this order, but that such transfer shall be stayed if an appeal is taken from this order.