**Max D. HAMMOND, Plaintiff/Respondent,**

v.

**Gulsen HAMMOND, Defendant/Appellant.**

**No. 65399.**

Missouri Court of Appeals, Eastern District, Northern Division.

March 14, 1995.

James T. Hensley, Jr., Kirksville, for appellant.

John Salvin, Farr & Hickman, Kirksville, for respondent.

CRANDALL, Presiding Judge.

Wife appeals from the denial of her motion to set aside default judgment and to dismiss. The trial court entered a default judgment dissolving the parties' marriage, dividing

marital property, and awarding the transfer of custody of the only child born of the marriage to Husband from Wife, who now has custody of the child in Turkey. On appeal, Wife maintains that the default judgment was premature because it was entered before her responsive pleading was due. In addition, Wife maintains that the trial court lacked subject matter jurisdiction to adjudicate custody of the parties' minor child. We reverse and remand.

Husband was a United States citizen serving in the United States Air Force. For most of his childhood and adolescence Husband lived in various towns in northeast Missouri. He graduated from high school and enrolled in the Air Force in 1983. After his training at a few bases in the United States and England, Husband was ordered to serve in Ankara, Turkey, where he served for twenty-seven months.

While in Turkey, Husband met Wife, who was a Turkish citizen. They were married on May 9, 1990 in Ankara, Turkey; and their only child, Gail Denise Hammond (daughter), was born on June 15, 1991. By virtue of her birth to a citizen, daughter acquired United States citizenship. Wife, meanwhile, maintained only her Turkish citizenship. Neither Wife nor daughter ever lived in or visited the United States.

In February 1992, Husband was re-stationed to Ulmen, Germany. Wife and daughter moved with him to the military base, where they lived as a family. Six months later, on August 5, 1992, Husband filed a petition for dissolution of marriage with the Circuit Court of Scotland County, Missouri, asserting that his permanent address was in Memphis, Missouri, which was situated in Scotland County.[1] In the petition, Husband sought (1) dissolution of the marriage, (2) custody of daughter, (3) fair and equitable division of marital property, and (4) declaration of their separate property.[2]

After one unsuccessful attempt to serve process through certified mail, Wife was allegedly served with the summons and petition on August 29, 1992 by registered mail to the parties' home in Ulmen, Germany. However, the return receipt ordinarily attached to packages served by registered mail was missing. The only item filed with the court showing service of process was an affidavit by a German letter carrier. That affidavit, filed September 10, 1992, contained the following statement:

> I, Alexander Theisen, do hereby depose and say that: I am an employee of the Deutsche Bundespost, and a letter carrier for the town of Ulmen, Germany. Further, I physically delivered to Gulsen Hammond of Ziegel Strasse 5, 5447 Ulmen, a registered letter no. R 676 381 257 from Scotland County MO. [sic] and more specifically from the Scotland County Circuit Clerk Ex-officio Recorder's Office on the 29th of August, 1992.

The affidavit was sworn before "Timothy R. Doyle, Capt. USAF" and "Legal Asst. Officer, 7501 MUNSS," who was allegedly authorized to administer oaths.

The parties officially separated on September 4, 1992. At that time, Wife went to the Turkish embassy in Germany with daughter. Sometime later, she and daughter moved to Ankara, Turkey, where they resided with Wife's sister and family. Husband continued to live in Germany and is scheduled to remain there until his assignment expires in February 1995. He planned to request assignment to Whiteman Air Force Base at Knob Noster, in central Missouri. At the time of the hearings, he had not received

---

1. Husband's permanent address is the residence of his father, who has resided there since 1973. Husband's domicile has not been challenged.

2. Husband has also filed actions in Germany and Turkey. We have not been furnished with copies of these materials. The nature of those matters is unclear from the record as is the degree of Wife's participation in those proceedings. The legal file contains only a translated version of a temporary restraining order issued by the court in Germany. The order acknowledged Husband's action in Missouri and prohibited Wife from taking daughter out of Germany before a final custody decision was made in this matter. The German restraining order was dated September 8, 1992, some four days after parents' separation. The record does not reflect when Wife and daughter left Germany. We are unaware of any other foreign orders or decrees.

word whether the Air Force would honor such a request.

On October 7, 1992, the court found it had jurisdiction over the matter, ruled Wife to be in default, and adduced evidence. Because testimony of abuse was introduced, the court recessed so a guardian ad litem could be appointed. The matter was continued until October 12, 1992. After hearing more testimony from Husband, the court issued its default judgment dissolving the marriage of the parties and awarding Husband custody of daughter. Husband was also awarded all marital property in his possession. Wife was granted supervised visitation and all property in her possession. Neither party was ordered to pay child support or maintenance.

■ On July 19, 1993, Wife filed a motion to set aside default judgment or to dismiss.[3] In her motion Wife asserted the default judgment should be set aside because (1) service of process was improper and the return of service was invalid to confer personal jurisdiction, (2) the default judgment was entered before the expiration of the thirty day response period, and (3) the court lacked subject matter jurisdiction to determine the issue of custody.

A hearing on Wife's motion was held on October 6, 1993. The court heard testimony from Husband, a friend of Husband's, and the Circuit Clerk of Scotland County. On December 6, 1993, the court issued its order denying Wife's motion. The court found that the proffered evidence was sufficient to show proof of service on Wife and that no good cause existed to set aside the judgment under then Rule 74.05(c). This appeal followed.

■ Wife raises two issues in her brief. The first pertains to the lower court's jurisdiction to adjudicate custody and the second questions the timing of the court's default judgment. For convenience, we will address her second point first.

In that point, Wife asserts the trial court erred in entering its default judgment, in that the court improperly calculated the thirty day time frame in which she had to file her answer. She argues that because the default judgment was issued before the expiration of the 30 days, the judgment is void. *See Poindexter v. Marshall,* 193 S.W.2d 622, 624 (Mo.App.1946) (when a judgment is rendered before the time for answering has expired, the judgment must be set aside).

The court in its order focused its attention on the manner of service and concluded that Wife had indeed been served with process and therefore jurisdiction was established. The court found that the affidavit of the letter carrier, coupled with certain other evidence, was sufficient proof of service. In its order, however, the court failed to address whether, given proper service, the default judgment was entered before the thirty day response period had expired.

Wife does not contest on appeal the trial court's acceptance of the German postman's affidavit in lieu of the official post office return receipt specified in Rule 54.20(d). Rather, Wife urges that acceptance of the German postal worker's affidavit as a substitute for the required return receipt does not thereby transform mail service into personal service. Thus, Wife reasons, her answer was not due under the provisions of Rule 55.25(a) until thirty days after the affidavit offered as a substitute for the official return receipt was filed in the case.[4]

The affidavit was filed with the court on September 10, 1992. Ordinarily, the thirty day period Wife would have had to file her

---

**3.** Husband in his brief argues Wife's motion should be rejected as untimely. Rule 74.05(d) provides a motion to set aside should be filed within a reasonable time, not to exceed one year after entry of the default judgment. Wife filed her motion some nine months after entry of judgment. Considering the circumstances and Wife's residence abroad, we deem the filing within a reasonable time.

**4.** The rules pertaining to service of process were extensively revised effective January 1, 1994. All references to the service rules in this opinion are to the rules as they existed prior to those revisions. Pursuant to Rule 55.25(a), Wife's answer was due "thirty days after the service of the summons and petition, *except where service by mail is had,* in which event a defendant shall file an answer *within thirty days after the acknowledgment of receipt of summons and petition or return registered or certified mail receipt is filed in the case ....*" Rule 55.25(a) (emphasis added).

responsive pleading would have expired on October 10, 1992. However, that date happened to fall on a Saturday. Rule 44.01(a) provides that if the last day for taking action prescribed by the rules is a Saturday, Sunday or a legal holiday, the time is to be extended until the end of the next day which is neither a Saturday, Sunday or legal holiday. Because Monday, October 12, 1992, was a legal holiday (Columbus Day), Wife's answer was not due until the end of the day on Tuesday, October 13. The trial court, however, declared Wife to be in default on October 7, and entered judgment against her on October 12, 1992, the day before her answer was due under the rule pertaining to mailed service.

Husband does not dispute Wife's contention that the judgment was premature if the time for filing Wife's answer is calculated pursuant to the rules governing mail service. Instead, Husband claims that by filing the affidavit of the German postal carrier he satisfied all of the requirements for personal service. When personal service is accomplished in accordance with the applicable rules, the answer is due thirty days after service, which the affidavit indicates occurred on August 29, 1992. Thus, Husband claims that Wife was in default when she failed to file her answer or other responsive pleading on or before September 28, 1992, and entry of the default judgment was therefore proper. We disagree..

The affidavit of the German postal carrier does not establish personal service because it does not satisfy the requirements of either Rule 54.14(a) or Rule 54.20(b). Rule 54.14(a) provides:

> Personal service outside the state shall be made:
>
> (1) By a person authorized by law to serve process in civil actions within the state or territory where such service is made, or by the deputy of a person so authorized;
>
> (2) By a person appointed by the court in which the action is pending.

There is no evidence the German postal carrier is authorized by law to serve process in civil actions, nor can it be said he was appointed by the court here to serve process. *See State ex rel. Northwest Arkansas Pro-*

*duce Co., Inc. v. Gaertner,* 573 S.W.2d 391, 395 (Mo.App.1978). Rule 54.20(b) similarly requires an officer executing personal service outside the state to provide an affidavit establishing, *inter alia,* his "official character" and his "authority to serve process in civil actions within the state or territory where such service was made." Among other defects, the affidavit of the German postal carrier makes no mention of any authority to serve process in civil actions. Indeed, there is no indication that the postal carrier had any reason to know that "process" was what was being delivered.

In support of his position, Husband relies on the case of *State ex rel. Plaster v. Pinnell,* 831 S.W.2d 949 (Mo.App.S.D.1992). *Plaster* held that an affidavit from the clerk of the court that service of process attempted by certified mail had been returned unopened and marked as refused did not satisfy the requirements of the mail service rules. In the course of its analysis, the court further observed that assuming, without deciding, that then Rule 54.20(f) could be applied to service by mail, and further assuming that a postman could be considered a "server" as used in that rule, the "return" would have to satisfy Rule 54.20(a)(2) [for service within the state], which would in turn require an affidavit of the server "as to the time, place and manner of service thereof." *Id.* 831 S.W.2d at 952. Because there was no such affidavit, the court found it unnecessary to pursue the issue further. *Id.*

Contrary to Husband's contention, *Plaster* is not authority for the proposition that a party can transform an attempted service by mail into personal service by filing an affidavit from the postman as to the time, place and manner of service. Nor would such an interpretation of the rules be practical. A postman obviously has no knowledge of the contents of what he is delivering beyond what is written on the envelope. Thus, he is in no position to attest that he has "served process." More importantly, the party "served" in such manner would have no way of knowing that the time for filing the answer will be thirty days from the date of "service" instead of thirty days from the filing of the return receipt as provided in Rule 55.25(a).

Indeed, the summons from the clerk of the court attached to the petition delivered by the German postman expressly advised Wife that she was to appear and serve her responsive pleading "within 30 days after the return registered or certified mail receipt signed by you has been filed in this cause." Although Wife does not challenge on appeal the trial court's acceptance of the postman's affidavit as a substitute for the missing receipt, it would be inappropriate to accord it any greater effect than what it purports to be; namely, a substitute for the return receipt. Accordingly, we hold that the thirty days allowed by the rules for the filing of Wife's answer did not begin to run until the filing of the affidavit serving as a substitute for the return receipt. Thus, the default judgment entered prior to the expiration of the time for filing an answer was premature and must be set aside.

Having determined that the default judgment must be set aside we now consider whether to address wife's contention that the court in Scotland County lacks subject matter jurisdiction to determine the issue of child custody, under the Uniform Child Custody Jurisdiction Act, codified in §§ 452.440–.550, RSMo (1994).

Conceptually, it is important to note that none of the testimony at the default hearing was properly before the trial court. Because the testimony at the default hearing was adduced prematurely, there is no evidence in the record to support the decree. Wife's time to answer and participate in the proceeding had not expired. On remand, wife may chose to file an answer and actively contest the issues raised in the dissolution proceeding. Even if wife remains in default, the trial court would be required to take evidence.

In addition, the circumstances of this case require a new hearing upon remand. The original default hearing was held in October 1992. At that time, the child was one year old; she is now three and one-half years of age. The wife may or may not still reside in Turkey; husband's residence may have changed. Further litigation may have occurred between the parties in Germany or in Turkey. Given the present age of the child and the possible change in circumstances of the parties, it would be incumbent upon the trial court, as the fact finder, to consider the matter anew on remand.

We therefore conclude that the trial court erred in asserting subject matter jurisdiction on the issue of child custody because the default judgment was prematurely entered.

The decree of dissolution is reversed and the cause is remanded.

AHRENS and CRAHAN, JJ., concurs.